No. 50.—SAMUEL R. BLAKE, Trustee, &c., plaintiff in error, *vs.* RICHARD IRWIN, defendant in error.

[1.] By the marriage settlement, the property of the intended wife was vested in trustees, to be held *in trust* for the use of the husband during his life; he was to have the entire possession, and to exercise *reasonable* ownership over the same, and to alter and change the same by and with the consent of the trustees, and *provided,* it was for the benefit and advantage of the *trust estate*: if the wife survived the husband, then she was to have the entire use during her natural life, with the power of disposing of the one half thereof by will; in the event of offspring between them, the whole estate to vest in said child or children; the trustees to have the right at any time to re-settle the property, with the consent of both husband and wife; and several years after, this was done, so far as to allow the wife the right to dispose of a moiety of said estate, in any event.   At the death of the husband, he surviving his wife, and there being no offspring, the trust to cease, and the *legal* to unite with the *equitable* estate, and descend to the heirs at law of the husband:

   *Held,* that the legal title remained in the trustees, and that the equitable interest of the husband in the property, was not liable to be seized and sold by the sheriff, under an execution at law, and that the proper remedy for the creditors was in a court of equity.

*Fi. Fas.* and claim of the property levied.   Tried before Judge FLOYD.   In Bibb Superior Court.   May Term, 1847.

For the facts of the case and the errors assigned, the reader is referred to the opinion delivered by the Supreme Court.

NISBET, J., having been originally of counsel in the Court below, gave no opinion.

S. T. BAILEY, for the plaintiff in error.

POE & NISBET and C. J. McDONALD, for defendant in error.

Mr. BAILEY opened the case for the plaintiff in error, read the record, and submitted his authorities ; for which see his argument.

POE & NISBET, for the defendant in error.

Edmund Blake, the above plaintiff, in the year 1838, intermarried with Mrs. Eleanor Harris ; but before doing so, entered into a marriage settlement with his intended wife and Samuel R. Blake and N. H. Beall, trustees, by which settlement, among other things, a life estate in all the property of the said Eleanor was secured to said Edmund Blake.

Judgments were afterwards rendered in favour of said defendant in error, against the said Edmund, and the execution thereon levied upon said life estate, when a claim was interposed by the trustees in said deed of settlement, founded upon the following grounds, viz :

1. That the property was not subject to the debts of Edmund Blake.

2. That if subject at all, only so in a court of equity.

The Court held that the property was subject to levy and sale at law, and to this decision the plaintiff in error excepts, &c.

We shall examine both these grounds in one view, and reply, that the interest sought to be subjected, is not the interest of the *wife*, having a separate estate secured to her through the intervention of trustees, but it is the life estate of the husband, which has been left out of the settlement to the wife, the effect of the settlement being to limit the marital rights of the husband to a life estate, instead of a fee, which would have accrued to the husband, had there been no settlement. The object of the settlement, as expressed in the trust deed, is to make a provision for the intended wife, in the event she should outlive her husband ; but should he outlive her, then the fee should be his.

In this view of the case, this *life* estate of the husband is clearly a legal estate, and his, independent of all contingencies. The fee, by the trust deed, is made to depend upon the contingency of the duration of life, of the parties beneficially interested.

But let us examine this ground of error in another point of view, and inquire into the result, if there had been no trust deed executed. Upon the marriage being consummated, whose would be the title to the property of the wife ? The husband's, assuredly. We have then only to refer to the deed of settlement, to see that

it does not at all interfere with the marital rights of the husband to the whole of the wife's property, during the life of the husband. Of course then, this life estate must be subject to the debts of the husband.

But we will present this argument in a stronger point of view, and suppose that this life estate in the negroes levied on, had been secured to the wife, and that judgments at law could have been obtained against the wife, as they have and legally can be against the husband, and that executions founded upon these judgments had been levied on this life estate of the wife : would not, then, the principle established by Lord Thurlow, in *Fettiplace* vs. *Gorges*, 1 *Vesey Jr.* 46, and recognised by this Court in *Liptrot, adm'r.* vs. *Holmes*, apply with full force to this case ? "I have always thought it settled, that from the moment in which a woman takes personal property to her sole and separate use, from the same moment she has the sole and separate right to dispose of it. Upon the cases, I have always taken this ground, that personal property, the moment it can be enjoyed, must be enjoyed *with all its incidents.*" See also 2 *Kent Com.* 171; *Clancy on Hus. and Wife*, 354, 355; *Essex* vs. *Atkins*, 14 *Vesey R.* 542, 547 ; *Jacques* vs. *Methodist Ep. Ch.* 17 *Johns R.* 577; 2 *Story Eq. sec.* 1388; *Sanders on Uses and Trusts*, 344, 345. Is it not, then, one of the incidents to the possession of personal property, that it is subject to the debts and judgments of the owner. 18 *Vesey R.* 429.

If, then, this property would have been subject at law to the debts of the wife, had the life estate been by the trust deed secured to her, *a fortiori*, it is, under the circumstances of the case, subject to levy and sale under executions against the husband. *Lewin on Trusts*, 77.

But why is it, that an estate purely *equitable*, is not subject to be sold under process issuing out of the *common law courts ?* Is it not solely because it is an estate only recognised by a court of equity, and which a court of law will not sustain ? And for this reason, the courts of equity in England have recognised *equitable elegits, &c.*

But in this case, the marital rights of the plaintiff in error have, by the settlement, been *reduced* to a life estate ; whereas, if the settlement had not been made, the fee, on the marriage, would have vested in the husband. In the case of *Plasket* vs. *Dillon, Lewin on Trusts*, 24 *Law Lib.* 270, Lord Dillon, the tenant for life, had demised an estate to trustees for ninety-nine years, if he should

so long live, upon trust, after discharging certain incumbrances, to pay himself for life an annuity of £5,000, and subject thereto, upon certain trusts for his creditors. A judgment was afterwards entered up against him, and an elegit sued out, *but as there was no beneficial interest upon which the elegit could operate at law,* the judgment creditor filed a bill, &c. But here there is a direct beneficial interest secured by the deed, to wit, "that Edmund Blake shall occupy, possess, and retain possession of the before-mentioned property, and shall receive and enjoy all the rents, profits and emoluments accruing and arising therefrom, and shall exercise all reasonable acts of ownership over the said property."

In the case of *Plasket* vs. *Dillon,* Sir William McMahon said: " If the Statute of Uses had executed the trusts of this deed, Lord Dillon's interest would have been extendible."

In the case before us the trust is executed in two ways:

1st. By the rule of *law;* because the fee only is vested in the trustees, and not the primary use. Here the statute must operate and execute the trust in the *cestui que trust,* though contrary to the intention of the settler; for the will of the subject cannot control the express enactment of the legislature. *Lewin on Trusts,* 24 *Law Lib.* 53 *(marg.* 102, 103.)

2d. By the terms of the instrument itself; it being expressly provided in the deed of settlement, that Edmund Blake, the defendant in the executions, " shall occupy, possess, and retain possession of all the property, and receive and enjoy all the rents and profits, and shall exercise all reasonable acts of ownership." Consequently, if the trust had not been executed by the Statute of Uses, it would have been, to all intents and purposes, by the terms of the agreement between the parties.

But it may be contended that it is a *special trust,* because it secures an interest to the wife. We reply, that with the interest of the wife we have no concern, the object of this process being to subject the life estate of the husband to the payment of his just debts ; and the interest of the husband is so distinctly separated from that of the wife, by the limitations in the deed, that the creditors of the husband can enjoy his estate without in the least interfering with the rights of the wife. *Ioor et al.* vs. *Hodges,* 1 *Speer Eq. R.* 593 ; *Ford, trustee* vs. *Caldwell,* 3 *Hill R.* 249 ; *Pringle* vs. *Allen,* 1 *Hill Ch. R.* 135 ; *Rice* vs. *Burnett,* 1 *Speer Eq. R.* 590, 591.

C. J. McDonald, in conclusion, for the defendant in error.

1. The Court refused to charge, that if Beall, the trustee, purchased the execution against Edmund Blake, after he was constituted trustee by said contract, it was a satisfaction of said *fi. fas.* The refusal of the Court was right; there was no error in it. Executions are assignable, and the sale or assignment shall not be considered a, satisfaction of the execution, but the assignee may proceed to collect the same for his own use, in as full and ample a manner as the plaintiff could have done if no such transfer or · assignment had been made. *Prince,* 465. But it is contended, that the.assignee of the execution being trustee of the defendant, the purchase of the execution is a satisfaction of the debt. Not so. At law, the assignment is good, and the execution is collectable; in equity, perhaps, the assignee might be held to be a trustee, but if so, he would have the first claim for the consideration paid for the debt; the creditors of the *cestui que trust* would have the next claim. *Lewin on Trusts,* 147, *t. p.*; 3 *P. Wills.* 251 *note A.*

But this doctrine does not and cannot apply where the trustee has no funds, and by the terms of the trust not even the control of the trust property. A trustee cannot purchase at his own sale; but there is nothing in reason or justice, against a trustee's purchasing a judgment or other incumbrance, when he does not control the trust property; the rule does not apply in such case, for the rule is founded in the impolicy of tempting the trustee to refuse to apply the trust funds in his hands, in payment of incumbrances, to enable himself to purchase the trust property at a sacrifice. In the present case, the *cestui trust* has the control of the trust property; the funds are in his own hands; he is independent of the trustee. In fact, the trust deed is a mere form—it is void—for the *cestui trust* has the absolute control of the trust property; he cannot be controlled by the trustee, and he may sell the trust property. In this case, Beall is not a trustee to sell, nor is he a trustee for creditors, and not being a trustee for Blake's creditors, he may purchase incumbrances or judgments. Assignees of bankrupts, and executors of estates, are trustees both to sell and to pay; being trustees to ·sell, they cannot buy, because they cannot purchase at their own sale; being trustees to pay, they cannot buy in the debts, because they are trustees for creditors. 6 *Vesey R.* 628. In this case, the sheriff alone can sell under the

execution, and there is no principle which would prevent the trustee from purchasing at his sale, unless he had the control of the trust property, which he has not. The *cestui que trust* cannot object, because his interest cannot be affected. If the trust property is subject in the hands of the trustee, it was equally so in the hands of his assignor. The creditor might complain, perhaps, that the trustee had availed himself of his situation to purchase his judgment at an undue value; but certainly, Blake cannot say aught against it, unless Beall, in purchasing the judgment, had committed a breach of his duty, or unless as a general principle, the toleration of such purchases might lead to abuses by trustees. The whole rule is based in the impolicy of allowing the trustee to purchase when he has authority to sell. It is the danger of temptation which works the disqualification. 2 *Johns. Ch. R.* 270.

2. The Court was requested to charge, that if Beall purchased said *fi. fa.* after he was such trustee, the same can never be enforced against the trust property; which was refused, and counsel for that cause excepts. The same argument used under the preceding ground applies to this.

3. The Court refused also to charge, that there never vested in said Blake such a title to said property, under and by virtue of said marriage contract, as could be reached by levy and sale, at law.

The deed of trust gives the possession, use, and control of the property to Edmund Blake as long as he lives, and provides that he may modify and change the description, species and character of the property, with the consent of the trustees. The effect of this provision is, to vest the legal title in him, or the right to convey, with the consent of the trustees. He has the authority to modify and change the character, description, and species of property. This can only be done by a conveyance. If he can convey the estate so as to vest the legal interest in another, the legal estate must be in him. If the legal estate be in him for one purpose, it is for all purposes; it is for levy and sale.

Edmund Blake, under the deed of trust, had the right to occupy, possess, and retain possession of the property, and to receive and enjoy all the rents, profits, and emoluments arising therefrom. Edmund Blake was labouring under no personal legal disability. He was not an infant; he was not of non-sane memory. He was, then, what is termed in law, *sui juris.* Property given in trust is subject to the debts of *cestui que trust.*

An annuity given to a person for his personal support, *not to be*

*liable to his debts,* and to be paid from time to time into his proper hands and not to any other person, and his receipt only to be a sufficient discharge, is subject to his debts. 2 *Con. Eng. Ch. R.* 34. When trustees under a will, have a discretion as to the manner of the application of the trust fund for the benefit of a particular person, but no power to apply it otherwise than for the benefit of that *cestui que trust* during his life, his interest passes to his assignees, under the insolvent act, notwithstanding a provision in the will that he shall not have power to sell. 4 *id.* 483. By a marriage settlement of a widow, her property was assigned to two trustees, upon trust, to invest and pay the dividends to her for her life for her own sole and separate use, and, after her decease, upon trust to pay the fund to her daughter by her first husband, "for her own use and benefit." The daughter's husband, F. H., who was one of the trustees of the settlement, became bankrupt, and it was held, that on the death of the tenant for life, the assignee of F. H. was entitled to the fund, subject to the wife's equity, for a settlement. 7 *id.* 322.

The circumstance of the husband having been the trustee, did not alter the principle. His marital rights attached, but the court held that the wife's equity to a settlement, was preserved, no doubt because, had any other person besides the husband been trustee, the property could not be reached by him, except by application to that court, and in such case the wife's equity would have been enforced. The bill having been filed by the assignee, the court would still, having the subject before it, enforce the equity. The same principle is asserted, in the case of *Snowden* vs. *Dales,* where property was vested in trustees, to be held against the claim of creditors. 9 *id.* 391.

I have shown, that property given in trust is subject to the debts of the party beneficially interested. Now I proceed to show that the person having the beneficial interest, may, provided he be *sui juris,* dispose of the property. *Lewin on Trusts,* 77. The same of a married woman, whose property, on a contemplated marriage, is settled on her during life; on the death of her husband she may dispose of it absolutely. *Ath. on Marriage Settlements,* 173. Blake, then, being *sui juris,* could dispose of his interest independent of his trustees, and the purchaser would take an absolute title, one which even the trustees could not contest. Suppose he had so conveyed, would not the lien of the judgment have followed the property ? unquestionably. If the lien of the judgment would

have followed the property after the conveyance by Blake, did it not attach, and was not the property subject to it while it remained in his possession? certainly it would.

That property vested in trustees, is the subject of levy and sale, is decided in South Carolina, *James R. Pringle and others, trustees of Mrs. Cleary*, 1 *Hill Ch. R.* 135 ; . 3 *Hill Com. Law R.* 249.

In the case of Blake, the trustees have no duty to perform. The trust is executed throughout as soon as the property was delivered to Blake. It is the same as if he had an absolute life estate, with remainder to his wife. To protect the wife's interests, there is no necessity of a resort to chancery; our statute protects it. *Prince* 468.

The fourth and sixth grounds of error are answered in the foregoing.

In regard to the fifth ground of error, or the error predicated on the fifth point on which the Court was requested to charge, and refused, I have to remark, that the very proceeding of levy. and claim, and the issue made up thereon, is an allegation of fraud. The issue is between the plaintiff in execution, and the claimant, and the defendant is no more to be considered a party, than if it were an action of trespass brought by the claimant against the plaintiff in execution, for trespass in making the levy. The certificate of bankruptcy comes in collaterally, and coming in in this manner, it can be impeached for fraud—for fraud vitiates the most solemn judgments. 1 *Phil. Ev.* 341.

Again, when the proceeding is against the bankrupt, he must *plead* his certificate, which is notice that he relies on it as a defence. The claimant cannot plead it. It cannot be known to the plaintiff in execution, that the claimant will rely on it in support of his title, or to defeat plaintiff's lien; it is offered collaterally. It might be contended, if the issue were between the plaintiff and the bankrupt, and the latter had pleaded his certificate, that it could be impeached only on notice. It was admitted by counsel, arguing for the certificate in the case of *Pleasants* vs. *Meng*, that by the decisions under the English Bankrupt Law, the plaintiff could prove fraud in obtaining the certificate or concealment of effects. 1 *Dallas R.* 380. Third persons may contest the regularity of the commission. 2 *id.* 127.

S. T. BAILEY, for plaintiff in error, in reply and conclusion.

The question to be decided in this cause, is of great importance,

from the magnitude of the interests that will be affected in this State, by the decision.

If the decision of the Court below is to be sustained, the benevolent desire of many a parent to save his daughter from the imprudence or brutality of a husband, will be rendered unavailing in Georgia.

The naked question before the Court below, was: 1st, is the property levied on and claimed, subject to levy and sale at law, and 2nd, if yea, was it subject to the executions levied.

The Court below held the affirmative of both questions.

It is our business here, to show from authority and reason, that the Court erred.

The questions involved in the issue at bar, arise from the construction and legal effect of the marriage contract in the record, executed in 1838, between Edmund Blake and Eleanor Harris, widow, and N. H. Beall and Samuel R. Blake, as trustees. That instrument declares its object. Col. Blake and Mrs. Harris were about to marry; he was insolvent, and she had this property. Up to the execution of this deed, Blake never had any title or claim of possession to, in, or of this property or any of it. This deed is Mrs. Harris' conveyance of her property, not to Blake, but to certain trustees of her selection. Blake is a party to it, not for the purpose of conveying any right, title, or claim, to any property of his (as is usual in such contracts) to his intended wife, or to trustees for her, but is a party for the purpose of binding himself to abide by his intended wife's disposition of her own property; the trustees are parties for the purpose of carrying such disposition and instruction into effect. Now, could Blake set aside or annul this contract, and claim this property as his own, even for his life, against his wife and trustees under this contract? Every honest man of common sense, would answer no; since he never owned the property, he had no right to complain of the disposition its owner, Mrs. Harris, had made of it, especially as he assented thereto; then can his creditors do what he cannot do? They stand in his shoes, and are bound by what binds him, where there is no fraud either in fact or construction; there can be no fraud here on creditors, for the property, before the conveyance, never belonged to Blake. But, say the opposite counsel, Blake has a life interest in the property, under the deed. True, he has, but that interest is a use, and not a legal title to the *corpus ;* that is in the trustees, there to remain for the interest of all concerned, ten-

ants for life and remainder men, or to speak more correctly, tenant of the use for life.

The deed allows Blake to have possession and receive the *usufruct*, but subject to the control and direction of the trustees and Mrs. Blake. He could change the property, or dispose of it, with her and the trustees' consent; he, then, in holding and controlling the property, acts only as the agent of the trustees, and no authority can be shown that he was not competent to so act, as much so as any other disinterested individual. His possession was consistent with the deed, and if so, it does not affect the title nor expose the property to the claims of creditors, any more than if it remained in the hands of the trustees; his possession is theirs. *Cross* vs. *Glode,* 2 *Esp. Ca.* 574; *Cadogan* vs. *Kennett, Cowp,* 432, 3 *T. R.* 620; 4 *Com. Dig.* 230, 322; 26 *Eng. Com. L. R. cond.* 171; 4 *id* 244; *Vern.* 96, 194.

The husband's right of possession of his wife's choses in action, must be in his *character of husband,* to defeat her title, 1 *Will.'s on Ex.* 557; *Clancy* 134; *Ryland* vs. *Smith,* 13 *Eng. Ch. R. cond.* 281; and of course to defeat the title of her trustees. Then this property must be viewed as in the possession of the trustees, where the legal title is, with a right in Col. Blake to take the profits. And here the question occurs, does this vest in Blake such an interest as may be levied on and sold at law? We maintain it does not, but that it is a bare use issuing out of personal property, the legal title being in trustees to preserve interests, both vested and contingent. And here it is proper to notice the impression which seemed to weigh on the mind of the Court below in making its decision, and has also been pressed by the opposing counsel; that our statute, which requires purchasers of a life estate or term of years at judicial sales, to give bond for the forthcoming of the property at the termination of the particular estate—by implication authorized such sales in all cases, and gave a new remedy. It seems to me, with all respect, that every legal mind must come to a different conclusion. That statute provides, that at sheriff's sales, &c., of such interests, the officer shall require such bond " for the delivery of the property to the party entitled in remainder, provided the same is *required* by said party, his agent or attorney, who shall make affidavit," &c. Now, this Court at once perceives, that this act, found in *Hotchkiss,* 607, makes no provision for such a case as the one at bar; it provides only for vested remainders; it makes no provision for contingent remain-

ders. In our deed, there are several contingent remainders. How can a child unborn, *require* that bond, appoint an agent or attorney, or make the affidavit, as required by the statute? But the statute gave no new right; equity always gave the protection intended by this statute—one of very doubtful policy, inasmuch as it commits the important rights of others, to the care of often ignorant and dishonest officers. Such an act ought not to be stretched beyond its letter.

But it is unnecessary for us to war with that statute, or with the law that subjects "a life estate," or "a term of years," to levy and sale; it will be time enough to do that when by deed or will, both the corpus and the use of personal property, are conveyed directly to one for life or term of years, remainder to another and his heirs, and the property is levied on to pay the debts of the tenant of the particular estate. Such is not the case at bar. This is a bare equity which Blake has in this property, a use in personal property, which never was subject to levy and sale at law.

But before showing this from authority, I beg to call the Court's attention to the provision in the marriage contract, where it provides that Blake may, with the consent of the trustees, change or exchange the property, if by so doing he can enhance its value; or that the trustees, together with Mrs. Blake and her husband, may alter or annul this contract, so as to declare other uses and limitations. Now, can any court, under the constitution that guarantees to every party to a contract, that the obligations of his contract shall not be impaired, declare virtually that this provision in this deed shall be annulled, by depriving Blake of the power to perform it. It is not Blake alone that has a right to object; Mrs. Harris and trustees have a right to say, we selected Col. Blake to join us in the management of this property, or to join us in making other disposition of it; and if the Court say to them—true, we will remove Blake by taking away his interest and possession of this property, yet we put one, the purchaser, in his place—they have a right to reply, first, *non hæc in fœdera;* and second, that a court of law could not compel a purchaser to change or exchange this property, or to deliver it up to be conveyed to other uses and limitations, as is provided in the marriage contract; nor could a court of law secure the rights of the contingent remainder men.

The principle decided by this Court, in the case of *Leonard* vs. *Scarborough & Wife*, 2 *Kelly R.* 73, varies from this. That case was decided upon the obviously legal principle, that the interest of

a tenant in common, may be levied on and sold at law.   Such a tenancy is a legal title and interest, a something more than a use; the tenants may make a clear title by deed and give possession, for such tenants hold *per my et per tout;* but is Blake a tenant in common ? are all their titles under this deed alike and equal ? could Blake make a clear title and deliver possession to a purchaser ?   Would not the trustees in such an event be bound to interfere and take the property into their possession, it being a clear breach of trust or agency ?   Doubtless Blake may sell or dispose of the profits of the property, and whether the use or profits could or not in a court of equity, be diverted to the creditors of Blake, is not before this Court; it was not the question below; they are here seeking to get possession of the corpus.   In a court of equity, to sequester the profits or use, the court would take care of the equitable rights of Mrs. Blake, the property being hers, and would provide for her a suitable support; and would also take care of the interest of those in remainder by directing the property into the hands of the trustees, or a receiver, who would be likely, and bound, to protect it from abuse and destruction.   A court of law has no such power.

Although uses or trusts in real estate, are subjected to levy and sale at law, by the statute of Henry VIII., and by the 10th section of the Statute of Frauds, yet it has been often held, that those statutes apply to real estate and not to personalty.   *Scott* vs. *Scholey,* 8 *East R.* 486 ;   *Cadogan* vs. *Kennett, Cowp. R.* 432;   *Burnett* vs. *Rice,* 1 *Speer Eq. R.* 579.   These statutes changed the common law as to realty, but left it intact as to personalty.   *ib.; and Lynch* vs. *Utica Ins. Co.,* 18 *Wend. R.* 248 ;   *Doe* vs. *Greenhill,* 6 *Eng. C. L. R. cond.* 566. ·

Moreover, the trusts which are authorised to be sold by virtue of the 10th section of the Statute of Frauds, are simple trusts, to the use of the defendant alone, and not those where there are other uses mixed up with his.   *Hull* vs. *Greenhill, ib.* 564 ;   *Harris* vs. *Booker,* 13 *id.* 358 ;   4 *Hawk. R.* 342 ;   4 *Dev. R.* 172 ;   1 *Dev. Eq.* 537 ; 18 *Wend. R.* 236.

In *Watkins* vs. *Holman et al.,* 16 *Peters R.* 58, the Supreme Court of the United States held a resulting trust not subject to levy and sale; and they quote with approbation the opinion of Lord Kenyon, in *Hodsden* vs. *Staple,* 2 *Term R.* 684, where he says:

" Sitting in this Court, we must look at the record and see

whether a legal title is conveyed to the party claiming under these instruments; now there is no colour for saying that these give any legal title."

But the case at bar does not involve the question as to whether a resulting trust of personalty, can be levied on and sold at law. I refer to those decisions, to show how reluctant the courts are to trench on equitable, or quasi equitable interests.

That an equitable interest is not subject to levy and sale, is sustained by abundant authority. 3 *Bacon Abr.* 702; 3 *T. R.* 618; 1 *Ha. R.* 314; 2 *Johns. Ch. R.* 312; 8 *Taunt. R.* 676; 4 *Eng. C. L. R.* con. 244; 1 *Maule & S. R.* 251; 10 *Gill. & J. R.* 226.

A judgment is no lien on an equitable interest; the lien commences on filing the bill. 1 *Paige R.* 637; 2 *id.* 567. Hence no lien before Blake's bankruptcy. 2 *Vern. R.* 96, 194.

In *Bogart* vs. *Perry,* 1 *Johns. Ch. R.* 56, Chancellor Kent maintained the same doctrine, and said, an execution at law cannot sell or pass an interest which a court of law will not enforce and protect. I have already shown that a court of law could not enforce and protect the title of a purchaser at sheriff's sale of this property, without violating the legal rights of the parties to it, or in effect making a new and different contract for them. No court can do either, where the contract is a legal one, and untainted with fraud.

But we are told that our statute, *Prince* 463, subjects "the estate of the defendant, both real and personal," to levy and sale under executions. But the statute is speaking of *legal estates,* where the defendant has a clear title, unmixed with the right and title of others; and this Court well knows the distinction in law, between interests *mixed* and interests *joined* or *united;* the one is an intangible claim or interest, controllable only in equity; the other is a clear interest, capable of separation and sale at law, without interfering with the rights of others.

But although in its broadest sense, *estate* means the interest one has in real or personal property, yet that is not its general signification in all cases. Courts look to the context of deeds, wills and statutes, where the term occurs, for its meaning, and by that it is controlled. Now, looking to all the statutes on the subject of executions at law, and judicial sales and claims to property—for being *in pari materia,* they must all be construed together—can any legal mind have any doubt of the meaning of the term *estate,* as used

in the statute? Sheriffs are required to seize the property, and in case of personal property, have it at the place of sale, and when it is claimed, take a bond for its forthcoming, &c. No one can doubt that they are speaking of tangible, seizable things, when the legislature thus speak of *estate*. But the mandate to the sheriff is. in *totidem verbis*, the old common law *fi. fa.;* he is commanded to seize and sell, not the estate, not the interest of the defendant, but " the goods and chattels, lands and tenements." This form has ever been the only one in use in Georgia; it shows the understanding of the profession and the legislature, as to what is subject to levy and sale, and that is nothing but what is so subject at common law, except in cases where our statutes have changed that law. And touching the question before the Court, I challenge the production of a statute that changes the common law. Some interests have, by special statutes, been subjected to levy and sale, stocks, for instance, which by common law were not so before.

But the judge of the Court below distinctly announced, in delivering his opinion, that he based his decision mainly, upon the law as settled in the case of *Liptrot* vs. *Holmes*, decided by this Court; and that the argument of the counsel for the plaintiff in error in that case, clearly convinced him, that he was wrong there and right here. With the highest respect for that virtuous judge, I take leave to say, that he understands both that case and this incorrectly, and that the counsel for the plaintiff in error, in each case, has had the misfortune so to deliver himself as to be misunderstood by that Court.

What is that case, and what the decision of the Court? The question to be decided was, whether, after the death of the *cestui que trust*, her administrator could bring trover for the personal property, or did that right belong to her trustee? This Court held, that the object of the trust having been accomplished and ended, the office and title of the trustee ceased. There was an unmixed trust estate; there were not even any remainders; so that the fee was in the *cestui que trust*. How, then, are the two cases alike either in principle or decision? There is not even any resemblance, only that trusts are involved in both. In *Liptrot* vs. *Holmes*, the counsel maintained, and the Court sustained the doctrine, that an unmixed trust for the use of a male adult *compos mentis*, or a female adult *compos mentis* and *discovert*, vests the absolute property in the *cestui que trust*, and subject to his or her absolute control and disposal, in all cases where the property, by the

trust instrument, would vest in her heirs at the death of the *cestui que trust ;* upon the obvious principle, that it is the settled policy of the law that every *homo legalis* who has the absolute fee, should have the absolute control of his property. But such is not the case at bar, as is manifest from the marriage contract.

The object of this contract is shown to be, to secure a support to Mrs. Blake during her life, at all events, and to her children, if she has any; and although it expresses, that Blake may have possession and all reasonable control, yet, since Baron and Feme are in law one, it is the same as though the use had been expressed to her, or to her and her husband, for in either case, after receipt of the profits by the wife, they vest in the husband; and in such case only the corpus would be beyond his control, without her consent. And so it is in in the present case ; without her consent, or the consent of her trustees, he cannot change the property or declare other uses. This is very far from being like a clear life estate.

I take it that no case can be found, which is recognised as law at the present day, where it is held to make any difference in law, whether the use or profits of a trust estate are directed to be paid to either the husband or wife, or to both. In either case, they belong to the husband, and are, in equity, subject to his debts, unless the instrument conveying the property, directs it to the *sole* and *separate* use of the wife, freed from the disposal or control of the husband or his creditors. But still, if the corpus was in such case conveyed to trustees, neither equity nor law could subject that to the control of the husband or his creditors. But if the instrument conveys the corpus to trustees, with a direction that it shall be, after a certain time or event, paid or delivered to the wife, without such words as would convey to her a separate estate, then, not only the use but the corpus vests in the husband. Failing to bear in mind this obvious distinction, the Court below, and the opposing counsel, confound the *corpus* and its *use ;* whereas the law, (except in the case of simple trusts of real estate, where, by the statutes of Henry VIII. and Charles II. they are united,) recognises a marked distinction between an interest in the corpus, and the use of personal property. Some cases are reported in the books, in which this distinction is overlooked or disregarded, and have been relied on by the opposite counsel to some extent, and by the Court below, to sustain the doctrine they maintain.

I will endeavour to show that they are not law, and have been over ruled.

The cases of *Tyler* vs. *Lake*, 6 *Eng. Ch. R. cond.* 450; *Stanton* vs. *Hall*, *ib.* 445; *Kensington* vs. *Dollond*, 7 *id.* 322, and others like them, were cases in chancery, where either the use or the corpus was conveyed by such words as the court held did not convey a separate estate to the wife, and so vested in the husband. In the case of *Tyler* vs. *Lake*, the deed directed, among other things, as follows: " As to the *shares* and proportions of Catharine Cook and Betty Maria Anthony respectively, in trust, to pay the same into their own respective and proper hands, to and for their own respective use and benefit," it was held, very properly, that these *shares* vested in the husbands.

In the case of *Kensington* vs. *Dollond*, the court held, that words conveying a use were such as to vest it in the husband, but nevertheless decided that the wife's equity should be secured out of it.

The cases of *Brown* vs. *Pocock*, *Massey* vs. *Parker, and Newton* vs. *Reed*, are overruled in *Tullett* vs. *Armstrong*, 17 *Eng. Ch. R.* 31.

The case of *Pringle* vs. *Allen*, 1 *Hill Ch. R.* 135, *and Porcher* vs. *Gist,* and all the other cases founded on them, are expressly overruled in the well considered case of *Rice* vs. *Burnett*, 1 *Speer Eq. R.* 579, and *Ioor* vs. *Hodges, ib.* 593, by the unanimous opinion of the Court of Appeals of South Carolina.

In the last case, Judge O'Neal dissented from the reasons on which the court based its decision, but concurred in the correctness of the decision. The deeds in both the cases cited, were strikingly like the one in our record; they convey negroes to trustees, and provide that the husband and wife shall have the use, possession and control of the slaves; and, after providing for contingent remainders, direct that the property may be changed or sold, with the joint consent of the trustees and *cestui que trust*, to be re-invested in other property, &c.

Judge O'Neal, dissenting from the reasons, concurred in the decision, on the ground that " something still remains to be done by the trustee, showing that the possession is not absolute in the husband. Both are ante-nuptial settlements. "In the first place," he continues, " the property may be sold by the trustee and the *cestui que trust,* and the proceeds invested in other property. This shows that the possession was to be permissive only, a mere tenancy at will, if that term may be applied to personalty. He therefore concurred in the decision, that the slaves were not subject to levy and sale at law, and held that such decision did not conflict with the previous decisions in that State.

In the case of *Doe, ex. dem., Hall* vs. *Greenhill*, 6 *Com. L. R. cond.* 564, the same doctrine is maintained; here, the *cestui que trust* was to have possession and take the profits; it was held such an interest was not subject to levy and sale.

In *Haslington* vs. *Gill*, 26 *Eng. Com. L. R. cond.* 171, it was held that, as the possession of the husband and wife was consistent with the deed, the property did not so vest in the husband as that it could be subjected to his debts, but that the husband and wife held as the agents of the trustees.

If this property is to be subjected to levy and sale at law, then no trust can be created so as to secure a support to a married woman. The moment she receives the use or profit, it vests in the husband; for, when in her possession and beyond the control of the trustee, it is absolutely her's, and what is her's is his; and then the monstrous doctrine contended for on the other side, is to follow, that whoever has the use has the corpus—in other words, the provisions of the statute of Henry VIII, and Charles II, are to be applied to personal property.

I beg that the Court pause, before it sanctions so grave an innovation upon the common law—before it strikes from the hands of the fathers of Georgia, the last shield that the law allows them to interpose, between their confiding daughters, and often worthless or improvident husbands.

That a trustee cannot incumber the trust estate, *see* 5 *Johns. Ch. R.* 409; 1 *id.* 27; 3 *Vesey* 740; 6 *id.* 625; *Lewin on Trusts*, 290; 1 *Vern. R.* 49.

*By the Court.*—LUMPKIN, J., delivering the opinion.

This was a claim case, tried before Judge Floyd, in Bibb Superior Court, May term, 1847, in which the defendant in error was plaintiff in execution, and George C. McNeill, Edmund Blake and John Anderson, defendants in execution, and Samuel R. Blake, trustee of Edmund Blake, and Eleanor Blake his wife, formerly Eleanor Harris, was claimant.

Several *fi. fa's*, in favour of Richard Irwin, were levied upon divers slaves, as the property of said Edmund Blake, which were claimed by the said Samuel R. Blake, in his character of trustee, as aforesaid.

Upon the trial, the executions, with the levies thereon, were tendered and read in evidence; and it was proven by the sheriff,

that the slaves in dispute, were in the possession of Edmund Blake at the time of the levy. The testimony in behalf of the plaintiff was then closed.

The claimant then introduced a marriage contract, and read the same in evidence, as follows:

"THIS INDENTURE, of three parts, made the 15th day of November, 1838, between Edmund Blake, of the county of Bibb, and State of Georgia, of the first part, and Eleanor Harris, widow of the late Jeremiah Harris, and now of the county of Houston, of the State aforesaid, of the second part, and Nathan H. Beall and Samuel R. Blake, of the third part, Witnesseth, that whereas a marriage is intended to be had and solemnized between the said Edmund Blake and Eleanor Harris; in consideration of the said intended marriage, and of the sum of five dollars, to the said Eleanor Harris in hand paid, and for the providing and securing a competent provision of maintenance for the said Eleanor Harris, in case she should survive the said Edmund Blake, her intended husband; and for settling and assuring the property hereinafter mentioned, to such uses, and upon such trusts, as are hereinafter expressed and declared; the said Eleanor Harris, with the consent of the said Edmund Blake, her intended husband, and they, and each of them, have, and by these presents do grant, sell, alien and confirm, unto the said Nathan H. Beall and Samuel R. Blake, and their assigns, as trustees, the following property and estate, to wit: An interest of one-half in a lot or parcel of land, containing three hundred acres, more or less, situate, lying and being, in the county of Houston, State aforesaid, known as lot number —, in the tenth district of said county, and described particularly in a deed of transfer and conveyance, from *Allan Windham* to *Eleanor* and *Thomas W. Harris*, containing three hundred acres, more or less; together with all the houses, buildings, furniture, stock, utensils, emoluments, and all the appurtenances, to the said lot and farm belonging or appertaining; also, the following negro slaves, viz: Hannah, Kizzy, Dicey, Joe, Allen, Jack, Elbert, Lewis, Blenheim, Sylla, Sibby, Caroline, Sappho, and Patience, now in the ownership and possession of the said Eleanor, together with their issue and future increase, and all the right, title, and interest to the said slaves and their issue; also, all right, claim, interest and profit, to certain property, arising under the will of her sister, Rebecca Bostick, now in controversy, and in suit brought by ——, against ——,

Blake *vs.* Irwin.

in —— Superior Court, and all profits, interest, or advantage, which has, or may accrue to the said Eleanor Harris, in her right, as heir or legatee of said estate, as also what she may derive hereafter by legacies, &c.   To have and to hold the said property, hereinbefore specified to be hereby granted and conveyed, to them, the said Nathan H. Beall and Samuel R. Blake, their heirs and assigns, to such uses and upon such trusts, and to, and for, such interest and purposes as are hereafter declared, mentioned and expressed of and concerning the same ; that is to say—to the use and behoof of the said Edmund Blake for the term of his natural life ; and from and after the decease of the said Edmund Blake, if she, the said Eleanor Harris, his intended wife, should survive him, then to the use and behoof of the said Eleanor Harris, his intended wife, in lieu and satisfaction of her dower or child's part, to which she may have claim through the statute of said State, in all estates of free hold and inheritance of which the said Edmund Blake may die seised or possessed.   And it is hereby further declared and agreed, by each and every of the parties to these presents, that she, the said Eleanor, should she survive the said Edmund Blake, shall have full right and power to dispose of, by will, one-half of the before mentioned property and estate, unless there should be a child or children to have the whole of the said property and estate hereinbefore mentioned ; but should the said Edmund Blake survive the said Eleanor, his intended wife, without issue, then, the estate and trust hereby created, shall subside and cease at his death, and the legal unite with the equitable estate and interest in said property hereinbefore recited and specified, and it shall go and vest, as it would have done by and after the marriage of the said Edmund Blake and Eleanor Harris, if no trust or settlement had been made, and shall regularly descend to the heirs of the said Edmund Blake, lawfully begotten, forever; and it is further agreed, by all and each of the said parties, that the said Edmund Blake shall occupy, possess and retain possession of the before mentioned property, and shall receive and enjoy all rents, profits and emoluments accruing therefrom, and that the said Edmund Blake shall exercise all reasonable acts of ownership over said property, and by and with the consent and advice of the said Nathan H. Beall and Samuel R. Blake, may modify and change the description and species of property, if, by such change or alteration, he can enhance the value thereof, or increase the general value and amount of property granted and conveyed originally, as

herein specified; and it is hereby likewise declared and agreed, by all and each of said parties, that it shall, and may be lawful for the said Edmund Blake and Eleanor Harris, his intended wife, and the said Nathan H. Beall and Samuel R. Blake, at any time and times hereafter during their joint lives, under their respective hands and seals, and attested by two or more creditable witnesses, by and with the consent of said trustees, to revoke, make void, alter, or change, all and every, or any, the use or uses, estate or estates, herein and hereby before limited or declared, or intended to be limited or declared, 'of, and in, the property hereinbefore recited and specified, and . to declare new and other uses of the same, or of any part or parcel thereof; any thing herein contained to the contrary thereof, in anywise, notwithstanding."

Signed and sealed, &c. by the parties.

Also, the following post-nuptial instrument, being a modification of the foregoing :

"GEORGIA, }    Whereas, certain articles of agreement, entered
    *Bibb County,* }  into between Edmund Blake, of the first part, and Eleanor Harris, of the second part, and Nathan H. Beall and Samuel R. Blake, of the third part, for the settlement of property upon the contemplated marriage of the parties of the first and second parts, on this 15th day of November, 1838, did reserve to the said parties of the said settlement, the right to · revoke, make void, alter, or change, all or every, or any of the uses or estates therein and thereby before limited and declared of and concerning the property therein specified, and to declare other and new uses of the same or any part thereof; now, by virtue of said reservation, and in conformity thereto, it is agreed *mutually* between the parties to the said agreement, that the said Eleanor shall have the power, in any event whatever, of disposing of, by will, one half of said property mentioned and specified in said original agreement, hereby revoking, altering and amending the clause of said articles, which recites, that if the said Edmund Blake survive the said· Eleanor Harris, his intended wife, without issue, then the estate and trust thereby created, shall subside and cease at his death, and the legal unite with the equitable estate and interest in said property therein before mentioned and specified, and shall go and vest as it would have done by and after the marriage of the said Edmund Blake and Eleanor Harris, if no trust ·or settlement

Blake *vs.* Irwin.

had been made, and shall descend to the heirs of the said Edmund Blake, lawfully begotten, forever, so as to vest in the said Eleanor, in that or in any other event whatsoever, the full and absolute power of disposing of, by will, of one half of said property."

Signed and sealed &c.

These instruments were duly proven, and recorded in the proper office.

The claimant next offered, and was allowed to read, the certificate of bankruptcy and discharge, awarded to the said Edmund Blake, by the proper court, in order to show that he was released from all liability upon said *fi. fas.* It was admitted, that the property levied on was not returned in his schedule by Edmund Blake, to the commissioners in bankruptcy, he having been advised by his counsel, E. A. Nisbet, Esq., that it was not liable to be so returned.

It was in proof, that the executions levied on the property, had been bought up for Nathan H. Beall, one of the trustees named in the marriage deed, at the sum of fifty dollars each, and were proceeding at his instance, and for his benefit. It was also in testimony, that the property in controversy was in the possession of Mrs. Blake before the marriage, and that after the marriage it went into the possession of Blake and his wife, who have since lived together, and that it all came by Mrs. Blake, and belonged to her before the marriage.

Samuel J. Ray, testified, that he was present at the execution of the marriage contract, and that Nathan H. Beall was present likewise. He also witnessed the marriage, which was subsequent to the execution and delivery of the deed.

The case was then submitted to the jury, and claimant's counsel requested the Court to charge the jury, that,

1. If Beall purchased said executions against Edmund Blake, after he was constituted trustee by said contract, it was a satisfaction of said *fi. fa's.*

2. That if Beall purchased said *fi. fas,* after he was such trustee, the same can never be enforced against the trust property.

3. That there never vested in said Edmund Blake, such a title to said property, under and by virtue of said marriage contract, as could be reached by levy and sale at law.

4. That there never vested in the said Blake, such a title or right as could be levied on at law, during the life of Mrs. Blake.

5. That by virtue of the discharge in bankruptcy, said Blake was discharged from all his debts, and that all his property was also discharged from debts then existing, unless some legal lien was then existing against said property, and fixed.

6. That during the life of Mrs. and Mr. Blake, nothing but an equitable right and title to said property vests, under said marriage contract, in said Edmund Blake, which is not subject to legal liens, nor to levy and sale at law.

All which the said Court refused to charge; but then and there charged and decided the contrary to be the law; that said property was and is subject to levy and sale at law, for the debts of the said Edmund Blake.

To which the counsel for the claimant excepted.

Counsel for the plaintiff in error, submit two questions for the decision of this Court: 1st. Is the property levied on and claimed subject to levy and sale at law? and 2nd. was it subject to the executions levied?

[1.]    This Court is unanimously of the opinion, that the judgment of the Circuit court should be reversed, on the ground that the use was not executed, but that the legal estate continued in the trustees, and that the equitable interest of Edmund Blake, the debtor, was not subject to levy under these or *any other* executions.

It will be perceived that there is no controversy, even between counsel, as to the liability of Blake's interest in this property, whatever it may be, to pay the debts which he has contracted since his bankruptcy. The only question is, as to the mode or form to which recourse shall be had to subject this interest; whether it be such a *legal* estate under the marriage settlement, as may be seized and sold at law, or is it a *mere equity*, and one which can only be made liable for debts in and through a decree of a court of equity?

What are the facts and circumstances under which this instrument was made? and what are its terms? Mrs. Harris, a widow lady, being possessed of considerable property, proposes entering into a contract of marriage with Mr. Edmund Blake, who, as is apparent by a comparison of the dates of the deed of settlement, and of the judgments, was largely indebted at the time; and this fact is presumed to have been known, as the judgments were matters of record. The substance of this agreement is, that she conveys her property to Nathan H. Beall, her brother, and Samuel R. Blake, the son of her intended husband, upon the following

*trusts* and *uses*, to wit, for the use of her intended husband for life; if she survive him, to her use for life, with the power of disposing of one half thereof by will, the other moiety to go to his children; if he survive her, the trust to cease and subside at his death, and the *legal* to unite with the *equitable* estate, and to descend, the whole to his children. It is further provided, that should there be offspring, the fruit of this union, the entire property is to vest in it or them. It is further declared, that Edmund Blake is to have the entire use and possession of the property, and to exercise all reasonable control over the same; also, he is at liberty to change it, by the consent of the trustees, provided it is for the benefit and advantage of the trust estate. It is further declared, that the trustees and Mr. and Mrs. Blake, may, at any time, in conjunction, re-settle this property to such other uses and purposes as they may see fit; and the record discloses, that some few years thereafter this was done, allowing Mrs. Blake the right to dispose of one half of this property by will, under any circumstances; that is, whether she survived her husband or not.

The first point to be considered, is, what was the intention of the parties to this contract? For not only must this intention prevail, if it contravene no rule of law, *in all contracts,* but more especially in marriage settlements, which, like wills, are liberally construed, so as to effectuate the purposes for which they were executed, especially so as to protect the interest of that party for whose benefit they are made. *Atherley,* 27 *Law Lib.* 48, 58, 64.

As to the intention of the parties, it is not a matter of inference or conjecture; the instrument itself expressly declares at what time the *legal* estate shall unite with the *equitable;* not in Blake during his life, but at his death, upon his surviving his wife without children by her; so that, if the question of construction rested upon intention, the conclusion would be easy. But a grantor or testator may *intend* to do a thing, and yet not do it; and the courts are frequently obliged to say *voluit, sed non dixit.*

Are, then, the terms of this instrument so clear and explicit as to vest the legal estate for life in Edmund Blake, contrary to the avowed intention of the parties?

In behalf of the creditors, it is insisted, that even if the Statute of uses, and the 10th section of the Statute of frauds, did not apply to personalty, that still the very deed itself conveys the possession to the use, and transfers the use into possession, thereby making Blake the complete owner of the property, as well *in law* as

in equity. And it is true, that the *entire use* is given to him, but it is the *use* only, and not the *corpus*. It is true, that he is entitled to the *possession*, but that possession is evidently not an inherent right by virtue of the estate which he held, but bestowed upon him as the agent rather of the trustees. It is likewise true, that he has the privilege of exercising *reasonable* ownership over this property; but if the defendant had an absolute indefeasible estate for life, in this property, wherefore the necessity of giving him the right of possession? and why this restricted, qualified ownership? Can *reasonable* ownership mean any thing more or less than such ownership as is not inconsistent with the paramount title of the trustees?

So much for the case in behalf of the plaintiffs in execution, and for those clauses in the instrument which seem most to favour their position.

It is difficult to lay down a distinct rule, showing when a trust *is* and when it *is not* executed. The cases of *Carwardine* vs. *Carwardine*, 1 *Eden R.* 33, and *Leicester* vs. *Leicester*, 2 *Taunt. R.* 109, would prove, that it is not sufficient to prevent the estate from being executed that the trustee has *something* to do; but it would seem, that whenever the object of the trust would be defeated by its being executed. as in cases of trusts for married women, or to preserve contingent remainders, or where the trustee has some discretion to be exercised in relation to the estate; or where there is some object to be effected by the estate's remaining in the trustee, that in all such cases, the instrument will be construed not to convey an executed trust. *Posey* vs. *Cook*, 1 *Hill R.* 414; *Laurens* vs. *Jenny and others*, 1 *Speer Law R.* 366; *McIntyre* vs. *Agricultural Bank et al.*, 1 *Hill Ch. R.* 111.

And do not most, if not all, of these reasons apply in the present case? Here are contingent remainders to be preserved; should there be children born, the fruit of this union, the entire estate, by the deed, will vest in such offspring. And is there not an object to be accomplished by continuing these trustees? They are not only to superintend the property, and see to it that it sustains no injury during the continuance of the life interest of Blake, either by an improvident sale, or any other act of ownership, but the title is to remain in them that they may be ready at all times to unite with Blake and wife, as they have once done already, in re-settling this estate upon such other trusts as they may see fit. How could this be done under a sale at law? But Blake himself cannot sell

or dispose of this property without the consent of the trustees ; how can the agent of the law do more ? Can the sheriff sell, *nolens volens ?* we apprehend not. The possession of Blake, then, is not inconsistent with the rights of the trustees, and did not subject the property to be seized for his debts. *Cadogan* vs. *Kennett*, 2 *Cowp. R.* 432.

But I confess, that to my mind, there are other and higher objects to be accomplished by holding, that the legal estate shall remain in the trustees. It is .on account of Mrs. Blake, from whom the whole of this property was received, and upon the credit of which these debts were not contracted. Marriage settlements have the sanction of immemorial usage, and of the most enlightened part of the human race ; and this Court would be recreant to its duty to permit the rules of the law to be strained to defeat the end for which this contract was intended. It is true, that the use of this property is given to the husband for life ; but then he cannot aliene without the consent of the trustees and for the advantage of the trust estate. While this is the case, he cannot deprive the wife of a maintenance, even if he desired it, out of this property. Her interests, therefore, are essentially protected by this deed, independently of the power reserved of re-settling the estate. To allow it, then, to be sold *at law*, to pay the husband's debts, would be to defeat the very end for which the trust was created.

Let these creditors, then, resort to the appropriate forum—compel them to come into equity, for the purpose of subjecting the husband's interest; and then the equity of the wife, from whom this property was derived, can be set up and asserted.

Says an eloquent counsellor, (Mr. Balch,) in the case of *Morgan* vs. *Elam*, 4 *Yerger R.* 409, " The argument that these settlements are likely to produce perpetual feuds and contentions, seems to be more specious than solid. In most cases, the seeds of that rebellious spirit which the wife, having a separate property, may manifest towards her husband, are sown long before the period of marriage. This spirit may be traced back, in most instances, to a defective early training, to the indulgence of bad propensities in infancy and youth, not to the simple and single fact, that the *feme covert* has an income for herself and children, independent of the effects and fortune of her husband. In the faithful discharge of the duties of that mysterious connexion called marriage, the weaker sex may proudly challenge competition with the stronger. All experience teaches us, that in devotion to the

interests of their husbands and their children, in tenderness, patience under calamity, in disinterestedness, they are wholly without rivals in the opposite sex.

"In this country, where the laws of primogeniture and entails have been abolished, where even executory devises are looked upon with jealousy, these marriage settlements must be sustained upon the principle, that they are in many cases demanded by justice, humanity and prudence.

"This is an age of enterprise, of bold, reckless speculation, of refinement and increasing luxury. There are cases of frequent occurrence, in which it is the duty of an affectionate parent to place at least a portion of his means beyond the control of his daughter's husband, and even the daughter herself, to save her from the improvidence, the immorality, even the kind-heartedness of the man to whom she is united; for it often happens in this country, that men are ruined by their responsibility for others, prompted not by interest, but sheer good feeling.

"It seems to be a mere fancy to suppose that the affections and feelings of nature in the marriage state, are to be extinguished by the provisions of a marriage settlement, when we have continually such overwhelming proofs of their irresistible power, in the generous devotion of American wives and mothers!"

I have taken the liberty of making this extract, because there are not wanting those who look with jealousy, and distrust even, in respect to this favourite doctrine of the courts—*the wife's equity*, believing that it is calculated to make husband and wife aliens to each other.

But not only will the wife's interests be protected, and the contingent remainders preserved, but by going into equity, the exact interest of the debtor will be ascertained and adjudicated; which will prevent its being sacrificed.

Men ought to know what it is they buy, or else, how can they know what to bid? Expose such an interest as this at public outcry, and chance and not judgment would decide its marketable value. The result must prove highly injurious, either to the purchaser or to the debtor; and no one can doubt upon whom the ruin would fall. This very interest might be worth thousands, and yet, from the very nature of it, and the doubt and uncertainty attending it, it would probably be sold for a mere song. Sold by the sheriff, none but lawyers, and those who are willing and able to pay for their advice, could bid intelligently, and all fair competition would be

destroyed. Public policy, therefore, unites with other considerations to constrain the creditors of Blake to approach through proper channels in order to be heard. This may be a hard case to them, but the general good ought not to give way to private inconvenience.

It is unnecessary to discuss any other ground in the bill of exceptions. It is ordered and adjudged that the judgment below be reversed.