DAVID A. VASON, trustee, *et al.*, plaintiffs in error, *vs.* SARAH A. BELL, administratrix, *et al.*, defendants in error.

(TRIPPE, Judge, was providentially prevented from presiding in this case.)

1. A marriage settlement made without fraud, and duly recorded, in which the settler covenants to stand seized to the use of the intended wife and children of the marriage, and two other of his children by a former wife, of a sum of money which he covenants to invest for the uses declared, and for the faithful performance of which he pledges and mortgages his whole estate, then in his possession or thereafter to be acquired, is a good settlement against the husband, and if at the time, perfectly solvent, including the trust then assumed by him as a debt, it is good against creditors present and future. Marriage is a valuable consideration, and the lien thus created on property, in possession of the husband, duly recorded, is notice to all subsequent creditors, as to such property. But as to the property thereafter to be acquired, the lien is upon a mere possibility, and is not good against either present or future creditors.

2. When equity enforces a trust in a marriage settlement, in favor of those coming within the scope of the marriage consideration, it will

Vason *et al. vs.* Bell *et al.*

enforce it in full in favor of all the beneficiaries, whether they be within the scope of the consideration, or be only volunteers.

3. A marriage settlement, however good against the settler and creditors, or even subsequent purchasers, cannot divest legal liens actually acquired, such as judgments and mortgages.

4. That a guardian is in debt to his wards, as appears by his returns to the ordinary, does not give the wards a lien on his estate, unless the fund can be traced into some specific thing, or can itself be identified; nor does the fact that the guardian's whole estate is before the court, in the hands of a receiver, alter the rule. And this doctrine, that trust money does not create a lien, unless it can be traced, applies to all trusts of money, or of property turned into money. To give the *cestui que trust* a lien, the money must be traceable, or be capable of identification.

5. A laborer, or mechanic, who, as the employee of another mechanic, works upon a building, and accepts as a discharge of his debt, from his employer, the promissory note of the owner of the building, has no lien as a mechanic upon the building.

6. Whether one, who makes at the time of his marriage a settlement upon his wife, thereby disables himself from paying his existing debts, is a question of fact, and if the evidence be conflicting, and there be sufficient to justify the finding, this court will not disturb it.

7. When by consent of parties, the whole of a case, both as to the law and the facts, is submitted to the judge, this court will treat the judgment of the court, as to the facts, as though it were the verdict of a jury.

Equity. Husband and wife. Marriage settlement. Mortgage. Trusts. Judgments. Lien. Guardian and ward. Mechanic's lien. New trial. Before Judge STROZER. Dougherty Superior Court, October Term, 1873.

David A. Vason married Cordelia, a daughter of Henry Pope, by whom he had two children, William I. and Francis C. He, in right of this marriage, received certain negroes and other property, from the estate of Henry Pope. After the death of this wife, he contracted marriage with Mariah I., her sister, and prior to its consummation, to-wit: on the 18th day of June, 1855, he made a marriage settlement, in which he acknowledged himself to stand seized of the negroes that his intended wife was entitled to out of her father's estate; also, of the negroes which he had received in right of his first wife, and also of the sum of $13,000 00—which he supposed at

the time to be equal to the other property received, and to be received, in right of both his wives—for the following purposes, uses, trusts and limitations : 1st. That he should have the management of the whole of his property during his life, (unless he should at any time voluntarily relinquish it,) without any account for the hire or profits thereof, except for the support of the said Mariah, the support and education of William I. and Francis C., and of the children to be born of that intended marriage. In case the wife survived David A., the property was then to be equally divided between said Mariah and the children of both marriages, share and share alike. In case of Vason's surviving, the property to be divided among the children equally at his death. The property not to be subject to the debts of said Vason, but to be only in trust, for the purposes specified. The said David A. Vason to have the power at any time to invest the whole or any part of the said $13,000 00, in such property as he might deem best for the *cestui que trusts,* the title to which should be executed to him as such trustee, and pass under the deed; he to have the right to sell or dispose of any part of the property therein conveyed, or which may be purchased. The proceeds to be invested in such manner as he may think best for the parties interested.

"This instrument further provided that the whole of the estate possessed by said Vason at that time, or which he may thereafter become possessed of, shall" be and was "thereby pledged and mortgaged for the faithful execution of said trust, so that the whole of said sum, to-wit: the sum of $30,000 00, (negroes $17,000 00, other property $13,000 00,) shall not be diminished by any act of said Vason, but that the same shall remain for the uses and purposes as above stated." The settlement was duly recorded.

At this time David A. Vason was possessed of a large tract of land, now in his possession, in Dougherty and Lee counties, the dwelling-house and lots in Albany, where said Vason now lives; town lots of value in Albany, and real estate elsewhere, besides a large number of other negroes than those

mentioned in the marriage settlement, and good debts of great value. He was not in debt, or if in debt at all, none of those debts are now outstanding against him unsatisfied.

The second wife, Mariah I., died in 1869, leaving four children, the fruit of said last marriage, to-wit: Pope A., Callie D., Henry A. and Dolly May. Neither the $13,000, nor any part of it, has been invested in any property whatever, but the said David A. Vason used it as he did his own property and money in his business. All the negroes of the trust, as well as his individual negroes, were lost by the results of the war, and his estate otherwise greatly reduced.

On the 23d of November, 1870, the said Vason contracted another marriage with Sarah H. Ficklin. To induce Miss Ficklin to enter into marriage with him, said Vason agreed, from the date of the marriage, to stand seized for the uses, trusts and provisions therein named of the following property, to-wit: "the house and lots in Albany," where said Vason then lived, (this property cost about $10,000 00,) all the "household and kitchen furniture on said premises, or which might thereafter be purchased by him." The said Vason "acknowledged himself bound to pay the sum of $15,000 00" to himself, as trustee, for the uses after stated, which said sum should stand as a charge and prior lien upon the said Vason's entire estate, until the sum is fully discharged—all in trust that his said intended wife should be maintained, the minor children of said wife should be educated and maintained, and in the case of the death of said Sarah, that he or his representative hold the same, for the uses of such children as may be born of that marriage, and of the minor children of said Vason, then members of his family (the children of his second marriage.) In the event of the death of said David A. Vason, his intended wife him surviving, the said trust to be divided equally between said Sarah and the said objects of the settlement.

The right of sale and investment of said trust property was given to said Vason upon the written consent of said Sarah, or under the decree of a court of equity, the proceeds of sale and

investments to follow uses and trust, as declared. This settlement being agreed on and executed, the marriage was solemnized.

At the date of this settlement, there were a number of judgments against said Vason, which are still open and unsatisfied, besides a great number of other debts not in judgment. Whether his estate was sufficient to pay his debts in addition to meeting the obligations of the above trusts, the evidence was conflicting.

Judgment creditors in the United States and state courts, threatened the seizure and sale of all the property, real and personal, for the satisfaction of their said judgments, and this bill was filed by David A. Vason, as trustee under both settlements, to have the trusts secured for the benefit of his *cestui que trusts*, against said judgment creditors, and all other of his creditors; he made a schedule of his debts, and of his estate, both real and personal, offering to surrender the whole to the satisfaction of the debts, and asking only on his part the protection and security of the trust, out of said estate.

The bill also asked an injunction, which was granted, and the appointment of a receiver to take charge of the property for the benefit of all concerned.

David H. Pope was appointed auditor to audit the several demands against Vason. All the creditors proved their debts except some judgment creditors in United States courts.

The answers of the creditors denied the validity of these trusts—their superiority and priority of payment—and alleged that their debts should have precedence of payment because contracted most generally for the benefit of the trust estate; and as to the trust in favor of William I. and Francis C., they insisted that David A. Vason, their father, had already advanced them out of his estate more than their interest in this trust.

Vason admitted the fact of the advances by him to each of these children, of amounts larger than their respective interest in the money part of this trust, but he denied that it was in payment or extinguishment of their claims in this trust fund,

but as advancements to them out of his individual estate, which he, at the time thereof, could well afford to do without prejudice to the rights of creditors.

1st. The auditor sustained the. lien of the settlement of 1855, for $13,000 00, upon all the property of the estate, as prior to all claims except costs, taxes, and a vendor's lien in favor of John A. Davis.

The lien and general creditors excepted to this branch of the report upon the ground that no property was designated as being covered by said settlement, it being simply an agreement to settle said amount; also, that if a trust, it was not entitled to priority until the death of Vason. Also, that the enforcement of said trust was barred by the statute of limitations. Also, that William I. and Francis C. Vason, the children of the first marriage were volunteers as to said settlement, and therefore said trust would not be enforced as to them.

2d. As next in dignity, the auditor reported in favor of the claim of Marcellus E. Vason, in right of his wife, for $4,913 71. This indebtedness was based on the return of David A. Vason, as guardian for said wife. It appeared that on April 1st, 1873, he was indebted in that amount, principal and interest, to his said ward, for funds which he had received in the year 1852. It was not shown what had become of this money.

The lien and judgment creditors excepted to this portion of the report upon the ground that the facts as above stated, did not entitle the claimant to a lien.

3d. As next in dignity the auditor allowed judgments in the order of their date, which were prior to the settlement of November 23d, 1870, and then the trust created thereunder to the amount of $25,000 00.

The creditors postponed by this ruling excepted to it upon the ground that Vason was insolvent at the date of the execution of said instrument, and that therefore no valid trust for the benefit of his wife and children could be created as against existing creditors.

4th. After allowing certain other liens as next to be paid, the auditor placed a note in favor of William Armitage for $148 78, dated April 10th, 1871, due December 1st following, amongst the general creditors. A mechanic's lien had been sued out upon this claim, as against the residence of Vason, in the city of Albany, it being alleged that it was for work done as a carpenter upon said house.

It appeared from the evidence that Vason had employed F. M. Thompson to make repairs on his house a short time before his marriage with Miss Ficklin. That Thompson procured Armitage to do the work. That he never paid either Thompson or Armitage. That he gave Armitage the note for his services.

To this portion of the report Armitage excepted.

Many other issues not herein set forth were made upon the auditor's report, but they are unnecessary to an understanding of the decision. All the questions of law and fact were submitted to the determination of the court without the intervention of a jury.

It decreed that the report of the auditor be sustained with the following modifications:

"The exception to the claim of M. E. Vason and wife is sustained as to its priority. The amount allowed is to be paid out of the funds as to the other simple contract creditors."

"The exception to that portion of the auditor's report which allows the claim of David A. Vason, trustee for Mariah I. Vason and children, is sustained, and said claim allowed only as a general creditor."

"The exception to so much of the auditor's report as gives a priority of payment to the claim of David A. Vason, as trustee for Mrs. Sarah H. Vason, and children, is hereby sustained, except as to the house and lot valued at $10,000 00, the claim to the same being superior to all others whatever, it being an investment of the trust fund; but the remainder of said claim, being a simple charge upon said estate, and having no specific lien upon the fund to be distributed, occupies the position of a general creditor."

Vason *et al. vs.* Bell *et al.*

Cross-bills of exception were sued out upon said decree, and error assigned accordingly.

R. F. LYON; G. J. WRIGHT, for plaintiffs in error.*

HINES & HOBBS; WARREN & ELY; SMITH & JONES, for defendants.

McCAY, Judge.

1. Marriage is a valuable consideration, and a marriage settlement, *bona fide* made, the forms and requirements of law duly complied with, is an instrument that a court of equity will not be slow to enforce. At common law the husband became, upon the marriage, the purchaser of all the wife's property (personal) in possession, and became entitled to reduce into possession any she might be or might become entitled to. He acquired the right to control her person and her labor, and the consideration of marriage has ever been held of the very highest nature: see the case of Campion *vs.* Cotton, 17 Vesey, 263, where the doctrine was carried so far as to sustain an ante-nuptial settlement of *all* the husband's property on the wife to the exclusion of his creditors; nay, it was even held that stocks belonging to other persons, but to which the husband had *apparently the title,* passed under the settlement to the wife as a *bona fide* purchaser for a valuable consideration. Nor does it require that specific property in specie must be settled. The husband may, as he did in the case before us, covenant to settle, and this will create a debt against him which he may charge on his estate as a debt. Such covenant creates a debt provable in bankruptcy, if it, the covenant, be to settle immediately: See Bright on Husband and Wife, 134, 161. If this be a debt why should it not be the subject of mortgage duly executed and recorded? Mr. Roper, in Roper on Husband and Wife, considers that if a husband covenant to settle on his future wife all the personal

---

*It is thought unnecessary to give the precise interest which the various counsel represented, as the parties to this litigation were so numerous.

estate of which he was then possessed, the ownership of the property is changed in equity, and if he sell and invest the proceeds in land, even in his own name, the money so laid out may be followed; for the benefit of the beneficiaries under the marriage settlement, and their interest will be a lien or charge on the land in equity against the heir. The settlement in this case, or the covenant, is very sweeping in the charge it makes on his property. It includes present and future acquired property. As to the future, we see no difficulty. A man may charge or sell all his estate by deed. It is only a question of discretion. A part of his estate would be too uncertain, but all his estate is broad enough and plain enough. It is as good as metes and bounds, since it is just as capable of being made certain as any other description. As to the charge on the future acquisitions, that is unquestionably illegal; one cannot convey or mortgage property not his at the time. " It is common learning in the law that a man cannot give or charge that which he hath not." Robison *vs.* McDonnel, 5 M. & S., 228. Under our registry laws there might arise difficulties in a contest with purchasers or judgment creditors of lands not in the county of the registry. But there is no such question here, and if there were we are not prepared to say that the registry of the marriage settlement, according to the act of 1847, would not be good notice even as to lands out of the county. We are clear, therefore, that upon all the property owned by Mr. Vason at the time of this first marriage settlement, then free from other liens, this deed created a debt to his wife and to the children of the marriage, secured by mortgage on his then property, and that, as against subsequent creditors, as it was duly recorded, it has a preference. We are clear, too, that this enures not only to the children of the contemplated marriage but to the children of the first marriage included in the deed. As against creditors, we do not see why it would not be good as a gift to these children. The consideration of natural love would support it, and the record of the mortgage would be notice.

Vason *et al. vs.* Bell *et al.*

2. But as we hold that the marriage settlement can be enforced as to those within the scope of the marriage consideration, these children of the first marriage come within the well settled rule, that when equity enforces a marriage contract, it will enforce it in favor of all included in it whether they are within the scope of the marriage consideration or not. And this, on the very simple ground that it was not the intent to give all to those within the scope; that the agreement is entire and would perhaps not have been made at all except as it is.

3. Even a marriage settlement cannot divest legal liens; cannot convey title not belonging to the husband. The most that can be claimed for the beneficiaries, is that they stand in the relation of purchasers for value. And even a purchaser for value takes subject to legal liens, such as judgments duly recorded, mortgages, etc.

4. To follow trust funds, it must be possible to identify them, to show that they have gone into the property sought to be subjected. We have diligently sought to find a case to justify the position of the counsel for these minors, but we do no think such a case can be found. The case put, of a deposit in a bank by a trustee, of money, to his own account, turned on the power of identification; the court held that, under the facts, it was possible to show exactly what money was in the bank, since each check appropriated the money first put in and so on. The statute of distributions is confined to the case of the death of the trustee. Our law makes, in such a case, a special rule for debts due as trustee. But it makes various other specific preferences, and we see no authority in the courts to extend the rule to other cases—as insolvency, etc. That is for the legislature and not the courts.

5. We see no reason to hold that a laborer who takes a promissory note of a third person in *discharge* of his debt, stands on a different footing from other persons agreeing to take the note of a third person in *discharge.* That is the clear law, and is just as applicable to laborers as to other

people.   He holds no debt against Vason :   See Addison on Contracts, 1098 and 1099.

6. We do not go into the question of whether this first or second settlement was a fraud upon the creditors of Mr. Vason.   The court has found that it was not, and there is plenty of evidence to sustain that finding.

7. The parties having waived a jury and consented that the judge might act as a jury and find the facts, his decision stands before us as a verdict and we do not feel authorized to disturb it.   We, however, reverse his judgment on the questions of law indicated in the head-notes to this opinion, with directions as to the disposition of the case.

Judgment reversed.