S05F0565. LANGLEY v. LANGLEY.

(613 SE2d 614)

HINES, Justice.

The central issue in this appeal from the final judgment and decree of divorce between the parties and the denial of a motion for new trial is compliance with an antenuptial agreement. For the reasons which follow, we conclude that the superior court erred in finding in the final judgment and decree of divorce that there was compliance with a certain provision in the antenuptial agreement regarding the payment of lump sum alimony.

Nancy and Robert Langley were married on July 4, 1999. The parties entered into an antenuptial agreement which provided, inter alia, that should the marriage dissolve, Mr. Langley would pay Ms. Langley $25,000 as lump sum alimony, with each party waiving any and all rights to seek other alimony.[1] The agreement further specified that all gifted property was to become the separate property of the transferee. Mr. Langley filed and subsequently dismissed three

---

[1] The provision at issue states:

Mr. Langley and Ms. [Langley] agree that should their marriage dissolve, Mr. Langley shall pay to Ms. [Langley] lump sum alimony in the amount of $25,000.00 regardless of the length of the marriage. Except for those stated specifically herein, Mr. Langley and Ms. [Langley] each waive any and all rights to seek alimony, the same being periodic alimony, alimony in kind or lump sum alimony, or attorney's fees in the event of a dissolution of this marriage and for any reason whatsoever.

complaints for divorce against Ms. Langley. Ms. Langley filed the present complaint for divorce in August 2003. Following a bench trial in March 2004, the superior court entered a final judgment and decree of divorce between the parties on April 6, 2004; the final judgment and decree of divorce provided that the agreement remained in full force and effect and was incorporated by reference. The superior court specifically found that the $25,000 lump sum alimony to which Ms. Langley was entitled under the agreement had been paid by Mr. Langley in the form of temporary alimony and attorney fees. Ms. Langley's motion for new trial was denied.

1. Ms. Langley contends that the superior court erred in failing to enforce the antenuptial agreement ("agreement") by finding that Mr. Langley's obligation to pay $25,000 in lump sum alimony had been met by his previous payments of temporary alimony and attorney fees. We agree. Mr. Langley was not entitled to an offset for these prior payments.

It is certainly true, as Mr. Langley asserts, that the payment of attorney fees and expenses of litigation are part of temporary alimony. *Scott v. Scott*, 251 Ga. 619, 620 (3) (308 SE2d 177) (1983). It is also the case, as Mr. Langley urges, that lump sum alimony "may be payable at once, or payable in periodic installments, or . . . may be a requirement that one spouse fulfill stated obligations to a third party for the benefit of the other spouse." *Stone v. Stone*, 254 Ga. 519, 520 (2) (330 SE2d 887) (1985). See also *Winokur v. Winokur*, 258 Ga. 88, 90 (1) (365 SE2d 94) (1988). So the question becomes whether Mr. Langley's payment of periodic support and attorney fees as a part of temporary alimony can satisfy his lump sum alimony obligation pursuant to the agreement.

The very nature of temporary alimony militates against the offset of such amounts. A provision for temporary alimony is different in character and purpose from an award of permanent alimony because it is intended to meet the exigencies arising out of the domestic crisis of a pending proceeding for divorce; it takes into account the peculiar necessities of the spouse at that time and provides the means by which that spouse may contest the issues in the divorce action. *Coleman v. Coleman*, 240 Ga. 417, 420 (2) (240 SE2d 870) (1977); see also *Scott v. Scott*, supra at 620 (3). In fact, this Court has determined that a spouse is not entitled to credit against permanent alimony for payments made by that spouse pursuant to a temporary order while the final judgment of divorce is pending appeal. *McDonald v. McDonald*, 234 Ga. 37, 39 (3) (214 SE2d 493) (1975).

The Fourth District Court of Appeals of Florida addressed a situation much like the present in *Urbanek v. Urbanek*, 484 So.2d 597 (1986). In that case, there was great disparity in the net worth of the

husband (approximately $25,000,000 to $30,000,000) and the wife ($36,000), and just prior to the marriage, the parties entered into an antenuptial agreement, which was the focus of the principal issues on appeal. Id. at 598. Under the Urbaneks' agreement, the dissolution of their four-year marriage would entitle the wife to a lump sum payment of $250,000. The agreement, unlike the one in the present case, also expressly provided that the wife agreed that any payments made to her by her husband for temporary alimony or other temporary support except child support, including attorney fees, were required to be offset against those sums to be paid by the husband in the permanent lump sum award. In a post-judgment order, the trial court determined that the offset provision was unenforceable, and directed the husband to pay the $250,000 lump sum amount without offsets for his former payments of his wife's attorney fees and temporary alimony. Id. at 601. The appellate court concluded that the trial court correctly decided the issue and that the offset provision was void ab initio because:

> [a] rule that permitted the husband to offset temporary support and attorney's fees against an agreed-upon lump sum could well place the wife in the untenable position of being required either to forego representation by an attorney in the proceedings or to diminish or totally eliminate her lump sum entitlement. Such a rule would clearly fly in the face of public policy.

Id.

The enforceability of antenuptial agreements is, of course, a matter of public policy. *Scherer v. Scherer*, 249 Ga. 635, 638 (1) (292 SE2d 662) (1982). Thus, considerations of public policy cannot be ignored in this case. The record confirms that there is great disparity in the financial positions of the parties, and Mr. Langley initiated and then dismissed three prior divorce proceedings, causing Ms. Langley to incur substantial legal costs in order to attempt to protect her interests. The record also shows that a large portion of the amount claimed as credit by Mr. Langley and offset by the superior court was paid as temporary support in these prior actions, and not in the present suit which resulted in the dissolution of the marriage. Thus, to allow a setoff for Mr. Langley's payments of temporary alimony would effectively allow Mr. Langley to use the terms of the agreement to place Ms. Langley in the untenable position of forfeiting her $25,000 entitlement or rendering herself financially, and thus legally, defenseless in the subsequent divorce action which proceeded to judgment.

Moreover, the language of the agreement itself compels the conclusion that the provided temporary alimony was not to be used as an offset to the $25,000 lump sum payment. The agreement specifically provided that the lump sum amount was payable to Ms. Langley "should their marriage dissolve," and provided generally that the Langleys would be bound by the agreement "in the event the marriage should be dissolved or terminated by legal proceedings." Thus, it was clearly anticipated that the lump sum payment was to be made, and consequently other alimony waived, as the result of the dissolution of the marriage, and the provision at issue did not encompass sums expended in obtaining such dissolution or in prior litigation.

Consequently, that portion of the final judgment and decree of divorce providing that the $25,000 in lump sum alimony to which Ms. Langley is entitled has been paid by Mr. Langley in the form of temporary alimony and attorney fees cannot stand.

2. Ms. Langley's remaining contentions are unavailing.[2] The gravamen of the complaints regarding insurance proceeds, gym equipment, an outdoor grill, and financial benefits received by Mr. Langley is a challenge to the trial court's assessment of the evidence and its findings in light of the parties' agreement. In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. *Tanksley v. Parker*, 278 Ga. 877 (1) (608 SE2d 596) (2005). The record fails to demonstrate that the trial court's findings on these issues were clearly erroneous.

Ms. Langley also asserts that the trial court erred by ordering her to relinquish certain personal property not in her possession, after misconstruing a submitted proposal regarding such items. But she fails even to identify which items of personal property she claims not to possess. What is more, contrary to Ms. Langley's assertion, there is no showing that the trial court misconstrued the proposal regarding such personalty.

Accordingly, the final judgment and decree of divorce is reversed only as to its provision regarding satisfaction of the $25,000 lump sum alimony obligation.

---

[2] Ms. Langley contends that the superior court erred in failing to require Mr. Langley to pay her the insurance proceeds recovered for her lost engagement ring because, contrary to the evidence, the court found that the proceeds had been expended by the parties during the marriage; erred in its finding that the gym equipment was not gifted to her; erred in its finding that the outdoor grill was not gifted to her; and erred in its finding that monies received from Mr. Langley's employer were benefits covered by the antenuptial agreement and were not income subject to equitable distribution.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 23, 2005.

*Moss & Rothenberg, Robert A. Moss*, for appellant.
*Michael J. Kramer*, for appellee.