S09A0197, S09X0198. DOVE v. DOVE; and vice versa.

(680 SE2d 839)

SEARS, Chief Justice.

We granted appellant Paul Dove's application for interlocutory appeal to consider whether the trial court erred by ruling that the parties' prenuptial agreement was unenforceable because it was required to be attested by two witnesses under OCGA § 19-3-63 but was not. Lauri Dove has filed a cross-appeal, contending that the trial court erred in ruling that the prenuptial agreement satisfied the criteria of *Scherer v. Scherer.*[1] For the reasons that follow, we conclude the trial court erred in ruling that OCGA § 19-3-63 applies to the prenuptial agreement but did not err in ruling that *Scherer* was satisfied.

## Case No. S09A0197

1. OCGA § 19-3-63 provides, in relevant part, that "[e]very marriage contract in writing, made in contemplation of marriage . . . must be attested by at least two witnesses." In the present case, the question is whether a prenuptial agreement addressing alimony issues is an agreement made in contemplation of marriage. We conclude that it is not.

2. This Court has repeatedly stated that prenuptial agreements settling alimony issues are made in contemplation of divorce, not marriage.[2]

In *Scherer*, we stated that,

"[i]n the past, there has been virtually unanimous agreement in all jurisdictions that prenuptial agreements purporting to settle alimony in the event of a future divorce are void ab initio as against public policy since they were considered to be in contemplation of divorce. Georgia has followed the majority position."[3]

In *Reynolds*, a case holding that prenuptial agreements settling alimony are void against public policy, this Court described these agreements as being in contemplation of divorce because they are

---

[1] 249 Ga. 635 (292 SE2d 662) (1982).

[2] *Blige v. Blige*, 283 Ga. 65, 66-67 (656 SE2d 822) (2008); *Chubbuck v. Lake*, 281 Ga. 218, 219 (635 SE2d 764) (2006); *Alexander v. Alexander*, 279 Ga. 116, 117 (610 SE2d 48) (2005); *Allen v. Allen*, 260 Ga. 777, 778 (400 SE2d 15) (1991); *Curry v. Curry*, 260 Ga. 302, 303 (392 SE2d 879) (1990); *Carr v. Kupfer*, 250 Ga. 106, 107, n. 1 (296 SE2d 560) (1982); *Scherer*, 249 Ga. at 638-639; *Reynolds v. Reynolds*, 217 Ga. 234, 254-257 (123 SE2d 115) (1961); *Birch v. Anthony*, 109 Ga. 349, 350 (34 SE 561) (1899).

[3] *Scherer*, 249 Ga. at 638 (quoting Davies, Validity of Prenuptial Contracts Which Fix Alimony, 14 Ga. State Bar Journal 18 (1977)).

" 'made with the intention of promoting a dissolution of the marriage relation existing between' " the parties.[4] In this vein, in *Scherer*, we favorably compared prenuptial agreements that addressed alimony issues with postnuptial agreements that we had previously considered to be invalid on the ground they promoted the dissolution of a marriage.[5] We noted that such postnuptial agreements were in contemplation of divorce and that, in *Sanders v. Colwell*,[6] we had recently abolished the rule that such postnuptial agreements are void as facilitating divorce.[7] The fact that we had approved postnuptial agreements made in contemplation of divorce supported our decision to approve such prenuptial agreements in *Scherer*. A leading commentator also notes that prenuptial agreements settling alimony issues are made in contemplation of divorce and, until recently, have been "universally held to be invalid."[8] In fact, only in 1982 did this Court hold that prenuptial "agreements in contemplation of divorce are not absolutely void as against public policy."[9]

3. In contrast to prenuptial agreements addressing issues of alimony, this Court has held that prenuptial agreements settling property rights of the parties at death are made in contemplation of marriage.[10] The reason is that such agreements are considered to be an inducement to marriage,[11] and the division or transfer "is only to occur if the parties remain married to each other and living together as husband and wife."[12] Such agreements have been referred to as death-focused instead of divorce-focused.[13] For example, in *Nally*, the husband promised his wife that, if she would marry him, he would name her the beneficiary of an insurance policy to be effective at his death. The agreement was upheld as valid on the grounds that it was an inducement to marriage and that marriage is a valuable consideration.[14] Prenuptial agreements settling property rights at death have uniformly been considered to be in contemplation of marriage

---

[4] *Reynolds*, 217 Ga. at 255 (quoting *Birch*, 109 Ga. at 350).

[5] *Scherer*, 249 Ga. at 640-641.

[6] 248 Ga. 376 (283 SE2d 461) (1981).

[7] *Scherer*, 249 Ga. at 640-641 (discussing *Sanders*, 248 Ga. at 376.

[8] 1 Clark, The Law of Domestic Relations, § 1.9 at 48 (2d ed. 1987).

[9] *Scherer*, 249 Ga. at 640.

[10] *Sieg v. Sieg*, 265 Ga. 384, 385-386 (455 SE2d 830) (1995); *Carr*, 250 Ga. at 107, n. 1; *Nally v. Nally*, 74 Ga. 669 (1885); *Vason v. Bell*, 53 Ga. 416, 423-425 (1874); *Merritt v. Scott*, 6 Ga. 563, 573 (1849); *Neves v. Scott*, 50 U. S. 196, 207 (13 LE 102) (1850).

[11] See *Sieg*, 265 Ga. at 385-386.

[12] 1 Clark at 53.

[13] Brian Bix, Bargaining in the Shadow of Love, The Enforcement of Premarital Agreements and How We Think About Marriage, 40 William and Mary L. Rev. 145, 153 (1998); 1 Clark at 48, 53.

[14] Id. at 672-676.

and have uniformly been considered valid in this State and elsewhere.[15]

4. The predecessor to OCGA § 19-3-63 was first enacted in 1863. Since then, it has been brought forward in identical language into the Codes of 1868, 1873, 1882, 1895, 1910, 1933, and 1981. When it first enacted the predecessor to OCGA § 19-3-63 in 1863 and when it brought it forward into each succeeding Code, the legislature did so based on case law approving of prenuptial agreements transferring property at death on the ground such agreements were in contemplation of marriage.[16] On the other hand, until 1982, case law in this State considered prenuptial agreements settling alimony to be in contemplation of divorce and thus void.[17] Because our legislature is presumed to enact statutes with full knowledge of existing law, including court decisions,[18] it defies common sense and logic to conclude that, when the legislature enacted the predecessor to OCGA § 19-3-63 in 1863 and brought it forward into each succeeding Code, it intended it to apply to void prenuptial agreements.[19]

5. In addition, we have held that the " 'enforceability of antenuptial agreements is . . . a matter of public policy.' "[20] Statutes, of course, are expressions of the public policy of this State.[21] In *Scherer*, in deciding the circumstances under which prenuptial agreements made in contemplation of divorce would not violate the public policy of this State, this Court did not specify that it was necessary for such agreements to comply with OCGA § 19-3-63 in order to comply with public policy. Thus, this Court must have considered and rejected the proposition that such a prerequisite existed.

Moreover, although the dissent states that we have explicitly acknowledged that the applicability of OCGA § 19-3-63 to prenuptial agreements settling alimony is an open question, this is not accurate. In *Scherer*, instead of specifying that prenuptial agreements had to comply with OCGA § 19-3-63 to be valid, we specified

---

[15] 1 Clark at 48, 53; *Sieg* 265 Ga. at 385-386; *Carr*, 250 Ga. at 107, n. 1; *Nally*, 74 Ga. 669; *Neves*, 50 U. S. at 207; *Vason*, 53 Ga. at 423-425; *Merritt*, 6 Ga. at 573.

[16] *Brown v. Ransey*, 74 Ga. 210, 215 (1885) (noting that then OCGA § 19-3-63 was enacted based on *Blake v. Irwin*, 3 Ga. 345, 367 (1847), and *Lafitte v. Lawton*, 25 Ga. 305 (1858), both of which approved of prenuptial agreements transferring property at death and considered them to be in contemplation of marriage).

[17] *Scherer*, 249 Ga. at 638-640; *Reynolds*, 217 Ga. at 254-255.

[18] *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005).

[19] *Haugen v. Henry County*, 277 Ga. 743, 745 (594 SE2d 324) (2004) (construction of statutes must square with common sense and sound reasoning).

[20] See *Blige*, 283 Ga. at 67, n. 3 (quoting *Langley v. Langley*, 279 Ga. 374, 376 (613 SE2d 614) (2005)).

[21] *Alexander v. Gen. Motors Corp.*, 267 Ga. 339, 341 (478 SE2d 123) (1996); *Stone v. Tillis*, 258 Ga. 17, 17 (365 SE2d 110) (1988); *Strickland v. Gulf Life Ins. Co.*, 240 Ga. 723, 729 (242 SE2d 148) (1978); *Logan v. State*, 86 Ga. 266, 266-268 (12 SE 406) (1890).

650

that courts should employ three definitive criteria in making this determination.

> Taking the law of other jurisdictions as our guide, we devised a three-part test for determining whether a particular antenuptial agreement is enforceable under Georgia law. We held that the party seeking enforcement bears the burden of proof to demonstrate that: (1) the antenuptial agreement was not the result of fraud, duress, mistake, misrepresentation, or nondisclosure of material facts; (2) the agreement is not unconscionable; and (3) taking into account all relevant facts and circumstances, including changes beyond the parties' contemplation when the agreement was executed, enforcement of the antenuptial agreement would be neither unfair nor unreasonable. The *Scherer* test, as refined and clarified by our later case law, continues to govern the enforceability of antenuptial agreements.[22]

As this quotation illustrates, we did not say in *Scherer* and subsequent cases that the criteria in *Scherer* were merely some of the considerations to be used in determining the enforceability of prenuptial agreements. We stated they were *the* criteria to be used. Since *Scherer*, we have stated that "[t]he three-part test we adopted in *Scherer* is consistent with the standards governing the enforcement of antenuptial agreements that prevail throughout most of the nation today."[23] In *Chubbuck*, although we noted that the issue whether OCGA § 19-3-63 applied to prenuptial agreements settling alimony was raised before the trial court,[24] we also stated in *Chubbuck* that "[w]e have been unable to find a case in which an antenuptial agreement made in contemplation of divorce has been ruled void and unenforceable for a reason other than failure to live up to the criteria set out by this Court in *Scherer v. Scherer*, [cit.]."[25] Moreover, the litany of our cases relying exclusively on these criteria is extensive and demonstrates that this Court has viewed these criteria as exhaustive.[26] To hold such agreements void now unless attested by two witnesses would do a disservice to the bench and bar and to the litigants involved.

---

[22] *Blige*, 283 Ga. at 67.

[23] Id.

[24] *Chubbuck*, 281 Ga. at 218, n. 1.

[25] Id. at 219.

[26] *Blige*, 283 Ga. at 66-70; *Grissom v. Grissom*, 282 Ga. 267 (647 SE2d 1) (2007); *Corbett v. Corbett*, 280 Ga. 369 (628 SE2d 585) (2006); *Mallen v. Mallen*, 280 Ga. 43 (622 SE2d 812) (2005); *Langley*, 279 Ga. 374; *Alexander*, 279 Ga. at 116; *Adams v. Adams*, 278 Ga. 521 (603

Furthermore, a holding that OCGA § 19-3-63 applies to prenuptial agreements settling alimony would put this State in the distinct minority of states that require witnesses to prenuptial agreements settling alimony issues.[27] The Uniform Premarital Agreement Act, which has been adopted in twenty-six states, does not contain such a requirement, and most, if not all, states that have adopted it have not added one.[28] Moreover, it appears that most other states have adopted a test similar to the one we adopted in *Scherer* for determining the validity of such agreements.[29]

6. For the foregoing reasons, the trial court erred in ruling that OCGA § 19-3-63 applies to prenuptial agreements settling alimony.

## Case No. S09X0198

7. In her cross-appeal, Ms. Dove contends the trial court erred in ruling that Mr. Dove's failure to disclose his income when the parties executed the prenuptial agreement did not render the agreement unenforceable. We disagree. Although the financial statement Mr. Dove provided to Ms. Dove did not list his income, it did list the value of his CPA practice, the value of his investment accounts, and the value of his residence and a lake house. The financial statement "reveal[ed] [Mr. Dove] to be a wealthy individual with significant income-producing assets."[30] The disclosure of these assets, combined with the fact that Ms. Dove "lived with [Mr. Dove] for four years" before the prenuptial agreement was entered, supports the trial court's decision that the absence of Mr. Dove's income on his financial statement did not "constitute[ ] the nondisclosure of material facts which would render the prenuptial agreement unenforceable."[31] Finally, contrary to Ms. Dove's contention, we conclude the trial court did not err in resolving the enforceability of the

---

SE2d 273) (2004); *Allen*, 260 Ga. at 778. Accord *Hiers v. Estate of Hiers*, 278 Ga. App. 242 (628 SE2d 653) (2006).

[27] See, e.g., Minn. Stat. § 519.11 (antenuptial agreements "shall be in writing, executed in the presence of two witnesses").

[28] Uniform Premarital Agreement Act 1983, Section 2, Formalities ("A premarital agreement must be in writing and signed by both parties."). States that have adopted this language include the following: Arizona (Ariz. Rev. Stat. § 25-202); Arkansas (Ark. Code Ann. § 9-11-402); California (Cal. Fam. Code § 1611); Connecticut (Conn. Gen. Stat. Ann. § 46b-36c); Delaware (Del. Code Ann. 13, § 322); Illinois (750 Ill. Comp. Stat. 10/3); North Carolina (N.C. Gen. Stat. § 52B-3); Texas (Tex. Fam. Code Ann. § 4.002); and Virginia (Va. Code Ann. § 20-150).

[29] See, e.g., *Ex parte Walters*, 580 So2d 1352, 1354 (Ala. 1991); *Simeone v. Simeone*, 581 A2d 162, 165 (Pa. 1990); *Cary v. Cary*, 937 SW2d 777, 782 (Tenn. 1996).

[30] *Mallen*, 280 Ga. at 47.

[31] Id.

prenuptial agreement on summary judgment.[32]

*Judgment reversed in Case No. S09A0197. Judgment affirmed in Case No. S09X0198. All the Justices concur, except Benham and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

In this case of first impression, the majority grants a special status to prenuptial agreements in contemplation of marriage ending in divorce, excepting that single type of marriage contract from this state's longstanding statutory mandate that all prenuptial agreements be attested in writing by at least two witnesses. The majority defends its creation of that special status by making a disingenuous semantical argument, by misinterpreting OCGA § 19-3-63 as inflexibly applying only to agreements settling property rights at death, by completely disregarding the clear intent of *Scherer v. Scherer*, 249 Ga. 635 (292 SE2d 662) (1982), to limit the enforceability of modern prenuptial agreements more strictly than other marriage contracts, and by inexplicably relying on a modern uniform act which the General Assembly of Georgia has not seen fit to pass.

1. "OCGA § 19-3-63 states that '(e)very marriage contract in writing, made in contemplation of marriage, . . . must be attested by at least two witnesses.' " *Chubbuck v. Lake*, 281 Ga. 218, fn. 1 (635 SE2d 764) (2006). The phrase "in contemplation of marriage" is not subject to the narrow construction posited in the majority opinion. I have not located any case from either this state or another jurisdiction, and the majority cites none, which holds that a prenuptial agreement settling the issue of alimony cannot be considered a contract in contemplation of marriage. To the contrary, we have previously abandoned a similar "fine line" distinction. *Sanders v. Colwell*, 248 Ga. 376, 378 (1) (283 SE2d 461) (1981).

A prenuptial, antenuptial, or premarital agreement is properly defined as a contract between prospective spouses which is made in contemplation of marriage, and generally in consideration thereof, and which determines property rights and economic interests either upon one spouse's death or upon a divorce. *Holler v. Holler*, 612 SE2d 469, 473-474 (II) (S.C. App. 2005); *Gross v. Gross*, 464 NE2d 500, 504 (Ohio 1984). Indeed, the very uniform act on which the majority relies as persuasive authority defines "premarital agreement" as "an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage." Unif. Premarital

---

[32] See *Scherer*, 249 Ga. at 637-641 (trial court granted summary judgment enforcing prenuptial agreement and we affirmed).

Agreement Act § 1 (1) (1983). Compare *Ahmed v. Ahmed*, 261 SW3d 190, 194 (Tex. App. 2008) (postnuptial agreement could not have been made "in contemplation of marriage").

Therefore, cases such as *Scherer* and *Chubbuck* which describe prenuptial agreements settling alimony issues as being "in contemplation of divorce" are simply referring to agreements in contemplation of marriage ending in divorce, as distinguished from those agreements in contemplation of marriage lasting until death. The majority arbitrarily describes only the latter as "in contemplation of marriage," even though they could be called antenuptial agreements "in contemplation of death" just as easily as the former can be described as "in contemplation of divorce."

Accordingly, prenuptial agreements settling the parties' rights in the event of a divorce clearly come within the plain terms of a statute which expressly applies to contracts made "in contemplation of marriage."

2. Neither OCGA § 19-3-63 nor any other section of Article 3, OCGA § 19-3-60 et seq., limits its application to marriage contracts which involve a transfer of property. To the contrary, we have held that a prenuptial agreement which waives each spouse's rights in the other's property either before or after death and which does not contemplate a conveyance of property is an enforceable marriage contract pursuant to OCGA § 19-3-62 (b). *Sieg v. Sieg*, 265 Ga. 384, 385-386 (2) (455 SE2d 830) (1995).

Prior to 1982, an exception to the enforceability of antenuptial agreements applied to those that purported to settle alimony in the event of a future divorce. *Scherer v. Scherer*, supra at 638 (2). Thus, the addition of such a divorce provision to an otherwise enforceable prenuptial agreement formerly rendered the whole contract illegal. *Birch v. Anthony*, 109 Ga. 349, 350 (34 SE 561) (1899). See also *Reynolds v. Reynolds*, 217 Ga. 234, 255 (6) (123 SE2d 115) (1961), which was overruled in *Scherer v. Scherer*, supra at 640 (2). Such a prenuptial agreement was not converted into something other than a marriage contract, but its purpose with respect to divorce caused it to violate public policy. Therefore, this Court simply never considered it necessary to determine whether such an unenforceable contract also violated Article 3. However, the mere fact that an agreement is unenforceable for one reason obviously does not make it automatically enforceable when a change in the governing law makes that reason no longer applicable. Thus, it is actually the majority opinion which "defies common sense and logic. . . ." (Maj. Op. p. 649.)

An antenuptial agreement relating to the rights of the parties upon divorce "is a type of contract and must, therefore, comply with ordinary principles of contract law. [Cits.]" *McHugh v. McHugh*, 436

A2d 8, 11 (Conn. 1980). "The contract must meet the usual requirements of offer, acceptance, and consideration. . . . [Cit.]" Howard O. Hunter, *Modern Law of Contracts* § 24:13. Contrary to the majority opinion, regardless of whether the prenuptial agreement is to be effective upon death or divorce, "marriage itself is ordinarily the consideration. [Cits.]" 5 Richard A. Lord, *Williston on Contracts* § 11:8 (4th ed.). Indeed, the prenuptial agreement here expressly recites as consideration the "entering into of a legal marriage between the parties." The fact that marriage is the consideration in all types of antenuptial agreements, including the one between the parties to this case, gives yet another indication that a prenuptial agreement which may become effective upon divorce is "in contemplation of marriage." Furthermore, "[t]he agreement cannot violate a statute. . . . [Cits.]" Hunter, supra. See also *McHugh v. McHugh*, supra.

3. Nothing in *Scherer* indicates that, contrary to these principles, it implicitly excluded any pre-existing statutory requirements otherwise applicable to marriage contracts. If the *Scherer* criteria are exhaustive as the majority opines, then even the statute of frauds would no longer be applicable. See OCGA § 13-5-30 (3). Furthermore, since the three-part test of *Scherer* is the only common-law restriction on prenuptial agreements settling the issue of alimony, the majority opinion exempts such agreements from the requirement of attestation by even one witness. In *Scherer*, however, this Court clearly anticipated that the enforceability of modern prenuptial agreements would not be determined with any more leniency than that of other marriage contracts.

Indeed, *Scherer* adopted its three-part test in order to effectuate its holding that modern antenuptial agreements "are not absolutely void as against public policy," but "should not be given carte-blanche enforcement." *Scherer v. Scherer*, supra at 640 (2), 641 (3). Of particular interest, the first part of the *Scherer* test, similar to OCGA § 19-3-63, seeks to prevent fraud or duress in the execution of prenuptial agreements. *Scherer v. Scherer*, supra at 641 (3). Furthermore, we have continued to "recognize[ ] the importance of marriage as a social institution and the vital public policy interests that can be undermined by antenuptial agreements. [Cits.]" *Blige v. Blige*, 283 Ga. 65, 67 (2) (656 SE2d 822) (2008). See also OCGA § 19-3-6 ("Marriage is encouraged by the law. Every effort to restrain or discourage marriage by contract, condition, limitation, or otherwise shall be invalid and void. . . .").

4. In light of that continuing public policy and my understanding of marriage contracts as expressed in this state's statutory and case law, I can only conclude that a prenuptial agreement which waives spousal rights upon divorce constitutes a marriage contract subject

to the provisions of Article 3, including OCGA § 19-3-63. The explicit attestation requirement in that statute obviously distinguishes this state's law from the uniform act which has never been adopted in this state and which omits any such attestation provision. And the foreign cases cited in footnote 29 of the majority opinion do not address the applicability of a statutory attestation requirement to a prenuptial agreement.

Moreover, the majority's complaint that application of Georgia's statutory attestation requirement to prenuptial agreements settling alimony issues would do a disservice to the bench and bar, who have supposedly viewed the *Scherer* criteria as exhaustive, fails to recognize explicit acknowledgments by both the bench and bar that the applicability of OCGA § 19-3-63 was an open question. *Chubbuck v. Lake*, supra; Dan E. McConaughey, *Ga. Divorce, Alimony and Child Custody* § 2:24, p. 85 (2007-2008 ed.); Jon W. Hedgepeth, *Premarital Agreements and Divorce Procedure*, 24454 NBI-CLE 1, 10 (2004). Indeed, in *Chubbuck*, which is relied upon by the majority, we specifically acknowledged that the issue of whether "this statute applied to antenuptial agreements made in contemplation of divorce" was not made a subject of the appeal. We granted an interlocutory appeal here in order to resolve the very issue which was left open in *Chubbuck*. Moreover, the majority's holding causes substantial confusion by raising additional questions, such as whether OCGA § 19-3-63 applies to prenuptial agreements which deal with both divorce and death, or which define each spouse's marital and separate property rights during the marriage.

> The antenuptial agreement here was signed by the parties and one witness — the notary public. . . . Because two witnesses did not sign the antenuptial agreement here, on its face it does not satisfy the plain requirement of [OCGA § 19-3-63], and it is invalid and unenforceable.

*Siewert v. Siewert*, 691 NW2d 504, 506-507 (Minn. App. 2005). Therefore, the trial court's judgment denying the motion for partial summary judgment should be affirmed in Case Number S09A0197, and the cross-appeal should be dismissed as moot in Case Number S09X0198. Accordingly, I respectfully dissent.

I am authorized to state that Justice Benham joins in this dissent.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

*LaFon & Hall, Beverly J. Hall*, for appellant,
*Banks & Stubbs, Robert S. Stubbs III*, for appellee.