S12A0672. FOX v. FOX.
(731 SE2d 676)

NAHMIAS, Justice.

In this divorce case, the husband disputed the validity and enforceability of the parties' self-styled "Premarital Agreement." He argued, among other things, that the agreement is actually a "marriage contract . . . made in contemplation of marriage," OCGA § 19-3-63, but it was not attested by two witnesses as required by that statute to be valid. The trial court agreed, and we affirm.

1. In 2000, appellant Joanne Fox ("Wife") and appellee Lyle M. Fox ("Husband") divorced after 25 years of marriage. The divorce decree and incorporated settlement agreement required Husband to pay Wife monthly child support of $500, as well as monthly alimony of $1,500 for one year, $2,000 for the next three years, and $1,500 thereafter until Wife was 59½ years old. By March 2002, however, the parties were planning to remarry. Without the assistance of legal counsel, they signed a nine-page document captioned "Premarital Agreement"; the document was notarized, but the notary was the only witness to it. Three months later, the parties remarried, thereby extinguishing Husband's child support and alimony obligations. In February 2010, Wife again filed for divorce, and she sought to enforce the Premarital Agreement as a legally binding prenuptial agreement. After a hearing, the trial court entered an order on June 10, 2011, ruling, among other things, that the Premarital Agreement, reviewed as a whole, was a "marriage contract in writing, made in contemplation of marriage" and that it therefore was void because it was not attested by at least two witnesses as required by OCGA § 19-3-63. After the trial court granted a certificate of interlocutory review, we granted Wife's interlocutory appeal.

2. Contracts between prospective spouses conditioned on the later occurrence of a marriage are referred to variously in statutes, case law, and treatises as "prenuptial," "antenuptial," "premarital," or "antemarital" contracts or agreements. See 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 11:8 (4th ed. 2003). This difference in terminology has no significance under Georgia law. See *Lawrence v. Lawrence*, 286 Ga. 309, 309, n.1 (687 SE2d 421) (2009). It is important, however, to distinguish "marriage contracts" — those made "in contemplation of marriage" — from other types of contracts that parties may enter into before embarking on a marriage. The distinction between "marriage contracts" and other prenuptial agreements may seem semantic, but it is well established in the law of Georgia and the rest of the nation, and it can affect the requirements for and validity of the contract at issue. See id. at 311.

In particular, we have held that a contract made in contemplation of divorce need not be witnessed. See *Dove v. Dove*, 285 Ga. 647 (680 SE2d 839) (2009). However, such contracts were long deemed invalid as contrary to our State's public policy favoring marriage, and while they are now enforceable under some circumstances, they must meet other requirements. See id. at 650-651; *Scherer v. Scherer*, 249 Ga. 635, 641 (292 SE2d 662) (1982). By contrast, for more than 150 years, the Code has said that "[e]very marriage contract in writing, made in contemplation of marriage, shall be liberally construed to carry into effect the intention of the parties and no want of form or technical expression shall invalidate the same." OCGA § 19-3-63. However, the statute also requires that "[t]he contract must be attested by at least two witnesses." Id. The Premarital Agreement at issue in this case was attested by only one witness, so if it is a "marriage contract," it is invalid and unenforceable.

Prenuptial agreements that settle property rights only during the course of a prospective marriage or at death are marriage contracts under OCGA § 19-3-63. See *Sullivan v. Sullivan*, 286 Ga. 53, 53-54 (684 SE2d 861) (2009) (holding that an agreement that defined the parties' respective rights in the property of the other and waived each spouse's right in the other's property either before or after death was a marriage contract); *Dove*, 285 Ga. at 648 (explaining that "prenuptial agreements settling property rights of the parties at death are made in contemplation of marriage"). On the other hand, contracts that provide for alimony payments in the event of divorce, or that direct how property should be distributed if the parties divorce, are considered to be made in contemplation of divorce rather than marriage alone and thus are not subject to OCGA

§ 19-3-63's attestation requirement. See *Lawrence*, 286 Ga. at 311-312 (holding that an agreement which both addressed alimony and divided the parties' property in the event of divorce was not a marriage contract subject to OCGA § 19-3-63); *Dove*, 285 Ga. at 37 ("This Court has repeatedly stated that prenuptial agreements settling alimony issues are made in contemplation of divorce, not marriage . . . ."). It is the substance of the parties' agreement, not its title, that matters. See *Harris v. Neely*, 257 Ga. 361, 362 (359 SE2d 885) (1987).

3. The parties' Premarital Agreement recognizes the possibility that their second marriage could fail, but unlike the agreements in *Dove* and *Lawrence*, it contains no provisions for alimony or property division. The mere mention of the possibility of divorce in an agreement entered shortly before a marriage (or remarriage) does not establish that the agreement was entered in anticipation of divorce. Agreements contemplating divorce typically operate to resolve post-divorce legal issues such as alimony, property division, or child custody. See, e.g., *Lawrence*, 286 Ga. at 311-312; *Dove*, 285 Ga. at 37. The parties' agreement here does not do that.

The nine pages of the Premarital Agreement, which appears to have been derived from one or more websites, consist primarily of boilerplate relationship advice (e.g., "Communication is a two-way street. Don't lecture or talk too much.") and covenants requiring the parties to behave a certain way during the marriage (e.g., "Joanne agrees to pay for all her outstanding credit cards and any other outstanding bills."). The Premarital Agreement does include a section entitled "Effects of Divorce," but it just describes the emotional, economic, and social effects of divorce in general — the reasons couples should stay married instead of divorcing. The section does not contemplate the parties' divorce, much less purport to settle legal issues that commonly arise from divorce, such as alimony, property division, or child custody.

Wife disagrees, claiming that the very last paragraph in the agreement provides for alimony:

> [I]n the event the marriage does fail, it is agreed that the settlement to [Wife] will compensate her for the hardship of mentally, emotionally, and physically creating a standstill in her life by further losing ground in her process of healing and of creating an independent life instead of putting her children and family reconciliation first. Compensation will resume in the afore-agreed amount of $2,500 monthly plus a cost of living adjustment to be paid for a period of 15 years.

(Emphasis deleted.) However, "alimony" is not mentioned in this paragraph (or anywhere else in the Premarital Agreement). Moreover, alimony is "an allowance out of one party's estate, made for the *support* of the other party when living separately," OCGA § 19-6-1 (a) (emphasis added), and this provision does not address Wife's need for post-divorce financial support. Notably, it does not correspond to the alimony provided by the parties' prior divorce decree. Instead, it provides for "[c]ompensation" due to Wife for her "hardship" incurred in remarrying Husband, and thus it may be viewed as a sort of liquidated damages clause rather than an alimony provision. See Restatement (Second) of Contracts § 356 cmt. a (1981) ("The central objective behind the system of contract remedies is *compensatory* . . . ." (emphasis added)).

Wife also argues that the Premarital Agreement's discussion of property shows that it was made in contemplation of divorce. But an agreement that defines the parties' "respective rights in the property of the other" only *during* their prospective marriage is a contract made in contemplation of marriage. *Sullivan,* 286 Ga. at 54. The section of the Premarital Agreement that discusses the parties' property focuses exclusively on their rights and obligations during their remarriage and contains no mention of post-divorce division. Wife contends that one statement regarding her individual retirement account is a post-divorce property division. It says that "[Wife] agrees to add her Vanguard IRA to any joint IRA in both names of [Husband] and [Wife] after [the parties' son] graduates College or reaches age 23, unless there is another dissolution of the marriage." That the parties used the continuation of their marriage as a condition precedent to an obligation does not mean that they provided for how their assets should be distributed in the event of a second divorce. Instead, the agreement is silent as to how Wife's Vanguard IRA, or any other asset, is to be distributed if the parties divorce. The lack of instruction on that point distinguishes this agreement from the one in *Lawrence,* which both expressly mentioned divorce *and* provided for how the parties' assets would be divided if they divorced. See 286 Ga. at 311-312.

Accordingly, the parties' Premarital Agreement, viewed as a whole, is a "marriage contract . . . made in contemplation of marriage," not a prenuptial agreement made in anticipation of divorce, and the trial court therefore correctly denied enforcement of the agreement due to noncompliance with the attestation requirement of OCGA § 19-3-63. Because the agreement is invalid on this ground, we need not address the other issues raised by Wife.

*Judgment affirmed. All the Justices concur, except Melton and Blackwell, JJ., who dissent.*

MELTON, Justice, dissenting.

Because the plain language of the parties' Premarital Agreement indicates that they intended to create an agreement in contemplation of divorce, rather than an agreement in contemplation of marriage, I cannot agree with the majority's erroneous conclusion that the agreement here was subject to the witness requirements applicable to agreements made in contemplation of marriage. Compare OCGA § 19-3-63 ("Every marriage contract in writing, made in contemplation of marriage, . . . must be attested by at least two witnesses") with *Lawrence v. Lawrence,* 286 Ga. 309, 312 (3) ("[A] contract made in contemplation of divorce . . . is not subject to the dual attestation requirement of OCGA § 19-3-63").

"This Court has repeatedly stated that prenuptial agreements settling alimony issues are made in contemplation of divorce, not marriage." (Footnote omitted.) *Dove v. Dove,* 285 Ga. 647 (2) (680 SE2d 839) (2009). And, as the majority correctly notes, "[a]limony is an allowance out of one party's estate, made for the support of the other party when living separately." OCGA § 19-6-1 (a). However, in reaching the conclusion that the agreement at issue in this case is not an agreement in contemplation of divorce, the majority completely ignores express language in the parties' agreement that shows their clear intent to settle alimony issues in the event that their marriage ended in divorce. Specifically, the agreement states that

> in the event the marriage does fail, it is agreed that the settlement to [Wife] will compensate her for the hardship of mentally, emotionally, and physically creating a standstill in her life by further losing ground in her process of healing and of creating an independent life instead of putting her children and family reconciliation first. Compensation will resume in the afore-agreed amount of $2,500 monthly plus a cost of living adjustment to be paid for a period of 15 years.

It is clear that the agreement triggers payments to be made in the event of a divorce. The majority, however, disqualifies the particular payments in this case as alimony because, as opposed to compensating Wife as a means of support, the payments "compensate [Wife] for the hardship of mentally . . . and physically creating a standstill in her life by further losing ground in her process of healing and of creating an independent life instead of putting her children and family reconciliation first." As explained more fully below, however, by taking a truncated view of this language, the majority mischaracterizes the entire clause as only creating a form of "liquidated damages" for Wife.

While there is certainly some language here that is reminiscent of a typical liquidated damages clause, that fact alone should not be a disqualifying feature with respect to a finding that the payments were in reality intended to be a form of alimony. This is especially true where, as here, there is still plenty of language in the agreement that is consistent with typical alimony. As an initial matter, in addition to compensation for her mental hardship, Wife is to be compensated for the "standstill in her life" and "losing ground" in "creating an independent life" for herself in the event that the parties divorce. In other words, she is being compensated for the economic loss of having put her family ahead of her professional career development. See, e.g., *Walton v. Walton*, 285 Ga. 706, 708 (2) (681 SE2d 165) (2009) ("court took into account Wife's status as a stay-at-home mother" in setting alimony award). This is a well recognized element of alimony that should not be disregarded simply because of inartful phrasing in the parties' agreement. Additionally, by providing for a "cost of living adjustment" with respect to Wife's post-divorce compensation from Husband, the parties further expressed their intention to address Wife's financial support. See, e.g., *Charles v. Citizens & Southern Nat. Bank*, 225 Ga. 549 (170 SE2d 243) (1969) (involving petition to modify alimony award based on a contract between the parties that expressly contemplated, among other things, revised payments "in the event that there should be a drastic increase in the cost of living nationwide").[1] Accordingly, the parties intended to specifically settle issues of alimony in their prenuptial agreement. In short, because

> [t]he antenuptial agreement in this case addresses alimony . . . [and because] it refers explicitly to the possibility of divorce [as a result of the marriage failing] . . . the antenuptial agreement at issue is clearly a contract made in contemplation of divorce, not a contract made in contemplation of marriage.

*Lawrence*, supra, 286 Ga. at 311-312 (3). Consequently, contrary to the majority's conclusion, the agreement was "not subject to the dual attestation requirement of OCGA § 19-3-63." Id. at 312 (3). I therefore respectfully dissent.[2]

---

[1] Indeed, Husband's agreement to pay for Wife's post-divorce cost of *living* and her professional financial setbacks has nothing to do with him paying her for alleged "liquidated damages" incurred from her mental hardship from having remarried him.

[2] I must also note that I am not entirely convinced by the majority's implication that an agreement made in contemplation of divorce should necessarily or typically address issues of alimony or property distribution in order to qualify as an agreement made in contemplation of

I am authorized to state that Justice Blackwell joins in this dissent.

DECIDED SEPTEMBER 10, 2012.

*Miles W. Rich*, for appellant.

*Meriwether & Tharp, Patrick L. Meriwether, Melissa A. Tracy*, for appellee.

---

divorce. Although this Court has routinely held that prenuptial agreements that *do* address such issues are agreements made in contemplation of divorce (see *Dove*, supra), that is clearly not the only type of agreement that could be made "in contemplation of divorce." If one simply agreed, prior to one's marriage, to pay his spouse a sum of money in the event that the parties divorced, that would ostensibly amount to an agreement made "in contemplation of divorce." The reason for the payment would not make the agreement any less of an agreement made in contemplation of divorce. I do not believe that only agreements that address alimony or property division should be recognized as agreements "made in contemplation of divorce" under Georgia law.